718 So.2d 569 (1998)
STATE of Louisiana
v.
Rudolph RIGGINS.
No. 97-KA-1194.
Court of Appeal of Louisiana, Fifth Circuit.
August 25, 1998.
*570 Bertha M. Hillman, Thibodaux, for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Alison Wallis, Assistant District Attorney, Gretna, for Plaintiff/Appellee.
Before CANNELLA and DALEY, JJ., and ROBERT M. MURPHY, J. Pro Tem.
DALEY, Judge.
This is an appeal by the defendant who was convicted of possession of cocaine in violation of Louisiana Revised Statute 40:967(C).

FACTS:
At the trial of this matter, Police Officer Ray Lassiegne testified that he and fellow officer, David Duplantis, were working in the narcotics division on the night of February 21, 1997. The officers were patrolling high narcotics trafficking areas in unmarked police cars and in "plain clothes". As they approached the parking lot of the Brown Bomber Lounge, an establishment frequented by illegal drug users, they observed two men huddled together on the unlit side of the lounge. The high beam lights of the patrol car were illuminated as the car stopped four to five feet from the two men. Officer Duplantis testified that one of the men, later identified as the defendant, appeared to be cupping something in his right hand. The defendant looked at the officers with a very startled expression. The officers exited the car and instructed the two men to proceed to the car. At that time, Officer Lassiegne testified that he observed the defendant drop a glass object to the ground from his right hand. As this object, later identified as a crack pipe, hit the ground and broke, the officers observed a white-rock like substance bounce from the pipe. This substance field tested positive for cocaine. The other man was released and the defendant was arrested and charged with possession of cocaine.
The defendant's testimony as to the events of that evening differed significantly from that of the officers. Mr. Riggins testified that he was in the area of the Brown Bomber Lounge when he saw an acquaintance by the name of "Ben." He stopped by to talk to Ben and the officers arrived shortly afterwards. Mr. Riggins testified that the crack pipe was actually seized from "Ben" during a search, and the officers wrote "Ben" a ticket, then released him. The defendant explained that he knew Officer Lassiegne and that if he had possessed a crack pipe when the officers stopped, he would have thrown it to the ground with such force that there would have been nothing left for the police to find. Mr. Riggins admitted to three prior narcotic convictions and a conviction for carnal knowledge of a juvenile. The defendant also testified that he was aware of drug activity at the Brown Bomber Lounge and that it was frequently targeted by the police for that reason.
At the close of trial the jury found the defendant guilty as charged. The defendant was then charged as a second felony offender and sentenced to ten years at hard labor.

DISCUSSION:
On appeal, the defendant argues that the trial court erred in denying his Motion to Suppress evidence seized as a result of an unlawful investigatory stop.
*571 The Motion to Suppress was submitted solely on the police report filed in this matter. Prior to the beginning of trial, the trial judge had examined the police report, stating "there seems to be nothing untoward that would compel me to have to rule and suppress the evidence."
The police report closely follows the testimony of the two officers, stating in pertinent part:
Upon observing the two N/M subject's (sic) the undersigned turned his unit into the parking area of the lounge. The undersigned at this point observed the subject later identified as Rudolph Riggins turn and look at the undersigned's vehicle. The subject then quickly turned and the two subject's (sic) proceeded to walk towards the front of the lounge. The undersigned at this point stopped his vehicle and exited. It was at this time the undersigned observed the subject identified as Rudolph Riggins drop a small piece of glass to the ground. The officers's (sic) identified themselves as police officers and instructed both subject's (sic) over to the undersigned's unit for further investigation.
The Fourth Amendment of the United States Constitution as well as Article I, Section V of the Louisiana Constitution protects individuals from unreasonable searches and seizures. However, the right of law enforcement officers to stop and question a person where there is reasonable suspicion to believe that the person is committing, has committed or is about to commit a crime is well established in our law. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Keller, 403 So.2d 693 (La. 1981).
The defendant contends that the police lacked the requisite reasonable suspicion to justify the investigatory stop in this case. The State responds by arguing that the defendant was not actually stopped when he abandoned the contraband. In support of their argument, the State cites State v. Tucker, 626 So.2d 707 (La.1993), opinion reinstated on rehearing, 626 So.2d 720 (La.1993). The facts in Tucker are similar to those in this case. In Tucker, officers were conducting a drug sweep which involved 10 to 12 marked police cars carrying 20 to 30 officers. As two officers approached an arcade, they observed the defendant and another man huddled together beside a parked car. When these men saw the police, the men broke apart and began to walk away. The officers stopped and ordered the two men to stop and lay down. One of the men obeyed, but the defendant moved toward the rear of the building and tossed away a bag containing marijuana. The defendant then lay on the ground.
The Louisiana Supreme Court, following and expounding on California v. Hodari D, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), held that Tucker was not actually stopped when he abandoned the marijuana because he did not submit to the show of police authority when he was ordered to halt and lay on the ground. Rather, he "continued freely in his movements, discarding a bag containing contraband." Tucker, at 713. The Court listed the following factors to determine whether an actual stop was "imminent":
1. The proximity of the police in relation to the defendant at the outset of the encounter;
2. Whether the individual has been surrounded by the police;
3. Whether the police approached the individual with their weapons drawn;
4. Whether the police and/or the individual are on foot or in motorized vehicles during the encounter;
5. The location and characteristics of the area where the encounter takes place;
6. The number of police officers involved in the encounter.
Tucker at 712.
Applying these factors to the case before us, we find that the defendant was not actually stopped because he did not submit to the show of police authority when Officer Lassiegne ordered him to proceed to the police unit, but rather continued freely in his movements, discarding the pipe and crack cocaine. Further, we find that no actual stop was imminent. There were only two officers involved in the encounter and they stopped four to five feet away from where the defendant *572 and the other man were huddling. Clearly the defendant was not surrounded by the police. Additionally, the officers did not approach the defendant with their guns drawn. Finally, the encounter took place in an unlit area on the side of a lounge known to be frequented by illegal drug users. Accordingly we hold that the trial court did not abuse his discretion when he denied the defendant's Motion to Suppress.

ERRORS PATENT REVIEW:
The record was reviewed for errors patent, according to Louisiana Code of Criminal Procedure Article 920. In this review we noted that the defendant was not properly advised of his right to remain silent before he stipulated that he was a second felony offender. Our jurisprudence has consistently held that in a habitual offender proceeding, a trial court must advise a defendant of his rights to a hearing, at which the State is required to prove the allegation of the multiple bill, and of the right to remain silent. State v. Johnson, 432 So.2d 815 (La.1983).
In the present case, the multiple offender Bill of Information alleged that the defendant was a fourth felony offender. The State and the defendant entered into an agreement where the defendant would admit that he was a second felony offender and would be multiple billed as such. However, the record is void of any indication that the defendant was advised of his right to remain silent, by either his counsel or the trial judge, prior to the trial court's acceptance of his guilty plea. Accordingly, we must vacate the defendant's multiple offender adjudication and sentence and remand this matter for rehearing and resentencing.
For the foregoing reasons, the defendant's conviction is affirmed and this matter is remanded for proceedings consistent with his opinion.
CONVICTION AFFIRMED; REMANDED FOR RESENTENCING.