866 So.2d 965 (2004)
STATE of Louisiana
v.
Arlene L. MASSEY.
No. 03-KA-1166.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 2004.
*966 Paul D. Connick, Jr., District Attorney, Andrea F. Long, Terry M. Boudreaux, Gevin P. Grisbaum, Assistant District Attorneys, 24th Judicial District, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
*967 James A. Williams, Butch Wilson, Gretna, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, CLARENCE E. McMANUS.
THOMAS F. DALEY, Judge.
The Jefferson Parish District Attorney filed a Bill of Information against the defendant, Arlene L. Massey, charging her with possession of cocaine in violation of LSA-R.S. 40:967(C), to which she pled not guilty at arraignment. After a hearing on July 30, 2003, the trial court denied Arlene Massey's Motion to Suppress Evidence. Arlene Massey subsequently withdrew her former plea of not guilty and pled guilty as charged, reserving her right to appeal the trial court's ruling on the Motion to Suppress pursuant to State v. Crosby, 338 So.2d 584 (La.1976).
That same day, the trial judge sentenced Arlene Massey to two years of imprisonment at hard labor. However, the judge suspended the sentence and placed Arlene Massey on active probation. The judge also imposed a fine and ordered Arlene Massey to pay a commissioner's fee of $100.00 plus court costs. This timely appeal follows.
At approximately 6:30 p.m. on November 4, 2002, Sergeant Joe Williams of the Jefferson Parish Sheriff's Office, along with other officers, responded to the 6000 and 6100 block of Field Street in Marrero.[1] Sergeant Williams testified that the officers were responding to complaints from residents regarding individuals selling drugs in that area. When the officers arrived, Sergeant Williams observed three black males and one black female, later identified as the defendant, Arlene Massey. Sergeant Williams testified one of the black men, whom the officer knew from the area, spoke to the black female, who in turn put something in her mouth. Sergeant Williams testified that he "stopped for further investigation," because in his 21 years experience in narcotics, he believed Arlene Massey may have concealed contraband in her mouth. He approached Arlene Massey and "requested her to extract it from her mouth." Arlene Massey removed three off-white rocks from her mouth and dropped them to the ground. The rocks field-tested positive for crack-cocaine, whereupon Arlene Massey was arrested.
In denying Arlene Massey's Motion to Suppress, the trial judge rendered the following oral reasons:
THE COURT:
All right. The area around the 6000, 6100 block of Field Street in Marrero, is notorious for drug activity and other crimes. The residents who live in that area, which is basically behind the McDonald's and across the street from Teenie's Bar, which is known, I think, by law enforcement, as well as the rest of the community, as a bar and an area and a corner where extensive drug activities and other crimes have taken place, historically.
There have been attempts to shut the bar down. There have been attempts by McDonald's to somehow prevent people from congregating in the area, because it's commonly known what activity is going on in that area.

*968 There have been numerous complaints that have been lodged by the residents, because these are law abiding citizens... there for generations and generations, about the concerns for the activity that takes place in that area. And there have been numerous arrests by narcotics officers in those areas.
So, therefore, when an officer approaches that area, especially acting upon information that they have been supplied at that time, as well as in the past, then they have a reasonable suspicion that the crowds that are hanging out in those areas, outside of the bar, and outside of McDonald's, or outside of the McDonald's parking lot, may be engaged in some questionable activity.
I do not find that the defendant was in any way being detained when she was observed to put something in her mouth, and it was requested that she remove the item from her mouth. She was not under arrest. She could have simply walked away. She could have simply walked away, upon being notified by one of the people who recognized Sergeant Williams, that the cops were approaching.
Therefore, I find that there was probable cause, and the motion to suppress is denied.
ASSIGNMENT OF ERROR
The defendant contends that the cocaine should have been suppressed because Sergeant Williams lacked reasonable suspicion of criminal activity when he told Arlene Massey to remove the cocaine from her mouth. According to Arlene Massey, she did not voluntarily expel the cocaine, but did so in response to Sergeant Williams' "police command." The State responds that the trial judge properly denied the Motion to Suppress because the cocaine was abandoned when Arlene Massey voluntarily took it out of her mouth and discarded it on the ground.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures.[2] An investigatory stop, authorized by LSA-C.Cr.P. art. 215.1 and Terry v. Ohio,[3] must be supported by reasonable suspicion of criminal activity. Reasonable suspicion is something less than probable cause to arrest. Rather, it requires that officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual's right to be free of government interference.[4] Although flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion.[5] The reviewing court must consider the totality of the circumstances, according deference to the inferences and deductions of a trained police officer that might elude an untrained person.[6]
*969 In the present case, Arlene Massey contends the police lacked reasonable suspicion to approach her and lacked probable cause to search her, and that the evidence should have been suppressed based on the Louisiana Supreme Court's decision in State v. Temple, 02-1895 (La.9/9/03), 854 So.2d 856. We disagree. We find that the police had reasonable suspicion to make this investigatory stop, based upon the citizen complaints of criminal activity, the area's reputation as a high crime area, and Arlene Massey's suspicious action placing something in her mouth. Temple is distinguishable.
In Temple, two New Orleans police officers responded to a call of an attempted burglary. The victim informed the officers that four individuals had attempted to enter her apartment without her permission. The officers canvassed the apartment building and observed four individuals sitting on a porch step. One of the individuals "quickly leaned against the wall" when he saw the officers. Thereafter, the officers decided to interview the individuals.[7] Upon seeing the officers, a woman and the defendant sat down. The defendant handed the woman a white object, which the woman placed in her pocket, and attempted to walk away. The officers "detained" all four individuals at that point. State v. Temple, 854 So.2d at 858. Thereafter, a female officer was summoned to conduct a "pat-down" search of the woman. During the pat-down, the female officer found 60 bags of cocaine and 141 pieces of rock cocaine in the woman's pocket. The woman said that the defendant had told her to hold the object he had handed her. The defendant was the only person arrested. Id. at 858.
The Temple court concluded that the evidence was unlawfully seized because the police lacked reasonable suspicion of criminal activity when the defendant and the others were detained and further found that the seizure of the contraband did not fall into the "plain feel" exception of the warrant requirement. Id. at 861-863.
The officers in this case were responding to the specific area where Arlene Massey was located pursuant to a citizen complaint of narcotics activity. Sergeant Williams testified that "[u]pon receiving the complaint, I immediately responded to investigate what was going on in the immediate area." Further, Sergeant Williams, a 21-year police veteran, described the area as being known for "[h]igh volume narcotics trafficking, prostitution, loitering, gambling...." Sergeant Williams also said that citizens had frequently complained about narcotics in this area. An officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidents of crimes, are factors that may support reasonable suspicion for an investigatory stop. State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 101-102. Further, the officer testified that he saw Arlene Massey place the object into her mouth upon being told of the officer's presence by her companion. The officer testified that in his experience, people involved with drugs often place the contraband in their mouths to conceal it.
Although the circumstances preceding the approach of Sergeant Williams and the other officers are similar to those in Temple, there are other factors that distinguish this case from Temple. As pointed out by the State's brief, the contraband in Temple was discovered after the defendant and *970 his group were detained. In the present case, however, we agree with the trial court that Arlene Massey was not physically detained before the contraband was discovered. The officers approached Arlene Massey and her companions and immediately asked that she produce what she had placed in her mouth, unlike the detention in Temple, where the group had to wait while a female officer was summoned to "pat-down" the woman. Additionally, the female officer removed the contraband from the woman's person, while in the present case, no officer had any physical contact with Arlene Massey before she produced the contraband from her mouth.
In Martin, supra, this Court held that a police officer made a lawful investigatory stop based upon reasonable suspicion of criminal activity. Earlier that morning, Sergeant Joe Williams of the Jefferson Parish Sheriff's Office had received a complaint from a citizen who stated that several black males were dealing narcotics in and around Ivory Nolan's lounge at 1322 Pailet Street in Harvey, a high-crime area. Sergeant Williams, Agent Crossen, and several other officers went to the lounge that evening to investigate these complaints. Id. at 100.
Sergeant Williams and Agent Crossen went inside the lounge, while the other officers remained outside. As Agent Crossen entered the lounge, he made "eye contact" with the defendant, who regarded the officer with a "surprised" expression and clenched his hand. Agent Crossen started moving toward the defendant with the purpose of further investigation. As he neared the defendant, the officer observed the defendant attempting to place his clenched fist into the right pocket of his pants. Agent Crossen then "took control" of the defendant's hand and asked the defendant what was in his hand. The defendant told Agent Crossen that he had crack cocaine in his hand. The defendant opened his fist, revealing a clear plastic bag containing several rocks of off-white objects that field-tested positive for the presence of crack cocaine. Id. at 100.
The Martin court found that the citizen's tip, complaints from citizens in the past, the defendant's presence in an area known to officers for high-crime and narcotics activity, combined with the defendant's startled expression, the closing of his hand when he saw the officers, and the defendant's attempt to place his closed hand into his pocket, provided reasonable suspicion to support the investigatory stop.[8]State v. Martin, 738 So.2d at 102.
This case is similar to Martin. We find that there was reasonable suspicion for an investigatory stop based on the citizen complaint received that day, past complaints from citizens, Arlene Massey's presence in an area known to officers for high-crime and narcotics activity, and Arlene Massey's placing an object in her mouth at the sight of police, which in the investigating officer's experience, was indicative of an attempt to hide contraband.
Even if the police lacked reasonable suspicion to support an investigatory stop, the evidence was lawfully recovered because Arlene Massey was not "seized" within the meaning of the Federal and State Constitutions at the time she dropped it on the ground. As pointed out by the State in its brief, the purpose of the Fourth Amendment is not to eliminate all contact between the police and citizens. See, Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Law *971 enforcement officers enjoy the same liberty possessed by every citizen to address questions to other persons. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991), the United States Supreme Court emphasized this point:
Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

Accord, State v. Fisher, 97-1133, p. 5 (La.9/9/98), 720 So.2d 1179, 1183.
A person is "seized" within the meaning of the Fourth Amendment only when that person either submits to the police show of authority or is physically contacted by the police.[9] No bright-line rule exists for distinguishing between investigatory stops, characterized by brief restraint imposed on a lesser showing of reasonable suspicion (Terry stops), from arrests based on probable cause. State v. Cojoe, 2001-2465 (La.10/25/02), 828 So.2d 1101, 1103. But, because the Louisiana Constitution affords a higher standard of individual liberty than the Fourth Amendment, State v. Tucker held a "seizure" also occurs when an "actual stop" of the individual is "imminent."
Tucker explained that "[i]t is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an `actual stop' of the individual is `imminent.'" Id. at 712. (Emphasis in the original). Factors to consider in determining whether an actual stop is imminent, which this Court enumerated in State v. Riggins, 97-1194 (La. App. 5 Cir. 8/25/98), 718 So.2d 569, 571, writ denied, 98-2520 (La.1/15/99), 736 So.2d 206, are:
1. The proximity of the police in relation to the defendant at the outset of the encounter;
2. Whether the individual has been surrounded by the police;
3. Whether the police approached the individual with their weapons drawn;
4. Whether the police and/or the individual are on foot or in motorized vehicles during the encounter;
5. The location and characteristics of the area where the encounter takes place;
6. The number of police officers involved in the encounter.
We find that a consideration of the factors in Riggins shows that there was no seizure or imminent stop in this case. The Louisiana Supreme Court has reversed cases where the lower courts held that an actual imminent stop occurred before the defendant discarded contraband. In State v. Johnson, 01-2436 (La.1/25/02), 806 So.2d 647, the trial court held that an actual imminent stop had occurred when two police officers in an unmarked car pulled up four feet from where the defendant was standing. In concluding that an actual *972 stop was not imminent, the Johnson court focused on the fact that the officers had not "attempted to assert any official authority over him by ordering or signaling him to stop" before he threw down the contraband. State v. Johnson, 806 So.2d at 648. See also: State v. Jackson, 00-3083 (La.3/15/02), 824 So.2d 1124, which held that an actual stop was not imminent when defendant dropped crack cocaine as two officers exited their unmarked police car, approached defendant, and identified themselves as the police. In both cases, the Supreme Court recognized that tips by informants prompted the officers to approach the defendant with the subjective intent to stop the defendant, but nonetheless held that an actual stop was not imminent. State v. Johnson, 806 So.2d at 647-648; State v. Jackson, 824 So.2d at 1125-26.
While the record in the present case does not reveal the precise number of officers involved, nothing in the record indicates that the police came upon Arlene Massey with such force that an actual stop was virtually certain. Thus, it does not appear that an actual stop was imminent before Arlene Massey discarded the contraband.
We likewise find that a seizure of Arlene Massey was not caused by a "show of authority" that triggered the abandonment. The test for such a seizure is an objective one, and it is whether the officer's words and actions would have conveyed to a reasonable person that he was being ordered to restrict his movement. Hodari D., 499 U.S. at 628, 111 S.Ct. at 1551, citing Mendenhall. The critical issue in the present case is whether a police officer's request to remove an object from one's mouth is a show of authority that would cause a reasonable person to believe that she is not free to disregard the request and walk away. In State v. Duplessis, 391 So.2d 1116 (La.1980), the Louisiana Supreme Court held that the defendant's constitutional rights were not violated when the defendant handed a leather pouch containing a gun to the police in response to the officer's asking "What's in the bag?" In affirming the defendant's conviction, the Louisiana Supreme Court recognized that the discovery of the gun was the result of the defendant's voluntary cooperation, rather than any unlawful police conduct. The Duplessis court emphasized that the police may lawfully seize evidence that is discovered as a result of a person's voluntary actions:
We reiterate that no one is required to stop or to answer questions posed by police under circumstances in which the Fourth Amendment protections are operative. However, when one who is suspected of a crime voluntarily complies with a police request, to his own detriment, he cannot reclaim the rights which he has waived.
State v. Duplessis, 391 So.2d at 1118.
In United States v. Mendenhall, the Supreme Court held that the defendant was not seized within the meaning of the Fourth Amendment when agents approached her in an airport, asked her if she would show them her ticket and identification, and posed her a few questions. According to the Mendenhall court, "[s]uch conduct without more, did not amount to an intrusion upon any constitutionally protected interest." Mendenhall, 446 U.S. at 555, 100 S.Ct. at 1877.
Mendenhall also discussed situations that might indicate a seizure within the meaning of the Fourth Amendment:
Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an *973 officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.
Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877.
The facts of the present case are similar to Duplessis and Mendenhall in that the police approached and addressed Arlene Massey. The record does not reflect that the officers had their guns drawn or that Arlene Massey was physically contacted by the police before Sergeant Williams addressed her. When property is abandoned before any unlawful intrusion into a citizen's right of freedom from governmental interference, it may be lawfully seized by the police. State v. Belton, 441 So.2d at 1199.
We conclude that the officers had reasonable suspicion to conduct this investigatory stop. Further, we find that Arlene Massey was not seized within the meaning of the Federal and State Constitutions when she removed the contraband from her mouth and discarded it. The trial judge properly denied the Motion to Suppress.
AFFIRMED.
NOTES
[1] The record does not clearly reflect the number of police officers who responded. Sergeant Williams refers to the officers as "we," and referred to other officers on the scene, but he only names one of the officers, Agent Blanche. Accordingly, it is unclear whether there were more than two officers involved.
[2] State v. Belton, 441 So.2d 1195, 1198 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
[3] 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[4] State v. Belton, 441 So.2d at 1198; State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 70, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
[5] State v. Belton supra.
[6] State v. Huntley, 97-965 (La.3/13/98), 708 So.2d 1048, 1049.
[7] In addition to the original two responding officers, a third officer also approached the group.
[8] It is noted that the Martin court concluded that the evidence was discovered after Agent Crossen lawfully immobilized the defendant's hand for the officer's safety. State v. Martin, 738 So.2d at 104.
[9] California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Accord, State v. Tucker, 626 So.2d 707, 712 (La.1993), opinion reinstated on reh'g, 626 So.2d 720 (La.1993).