925 So.2d 710 (2006)
STATE of Louisiana
v.
Ronald STANFIELD, Jr.
No. 05-KA-839.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 2006.
Rehearing Denied April 6, 2006.
*713 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Laura Schneidau, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana, Gretna, Louisiana, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate, Marrero, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Defendant, Ronald Stanfield, Jr., was charged with possession of cocaine, a violation of LSA-R.S. 40:967(C). Stanfield pled not guilty at his arraignment and later filed an "Omnibus Motion and Order for Pre-trial Motions" that included a "Motion to Suppress Confession, Identification, and Physical Evidence." After a hearing, the motions to suppress were denied. Stanfield filed a writ with this Court only from the denial of the motion to suppress the evidence. We denied the writ finding that, on the showing made, there was no error in the trial court's ruling and that Stanfield had adequate remedy on appeal. Subsequently, Stanfield withdrew his not guilty plea, and entered a Crosby[1] plea of guilty. He was sentenced to two years at hard labor with credit for time served.
At the hearing on the motions to suppress the evidence and the statement, Officer Stanley Brown testified that, on December 2, 2004 at approximately 11:10 p.m., he participated in the arrest of Stanfield. Officer Brown testified that he was in the vicinity of North Laurel and North Elm Streets in Metairie as part of a task force looking for guns and weapons. Officer Brown was familiar with the area because of a large narcotics and violent crime problem, and he had made arrests in the area. Officer Brown testified that, on this occasion, when he and his partner turned onto Laurel Street in an unmarked police car, they saw three black males standing near an apartment building from one hundred feet away. The incident was called in and, as a result, marked police cars responded to Laurel Street. Officer Brown testified that from fifty feet away he saw Stanfield and the other subjects "duck[ ] back into the darkness between two buildings" of the apartment complex when they saw the marked police cars turn onto Laurel Street. Officer Brown and his partner saw Stanfield and the two other subjects in the darkness. According to *714 Officer Brown, they felt it was suspicious, "possibly of a suspect carrying a gun," because when one of the subjects turned and saw the marked car they all ducked into the darkness between the two buildings. There is a courtyard between the two buildings but the subjects did not move there. Officer Brown and his partner pulled their car between the two buildings within fifteen feet of Stanfield and his companions, lighting the area with their headlights and strobes.
All three subjects were ordered to approach and place their hands on the police car. While the other two subjects quickly came to the police car and placed their hands on it, Stanfield approached with his hands in his pockets, which fact gave Officer Brown concern that he might have a gun. When the officer asked Stanfield to remove his hands from his pockets for his safety, he observed a clear cellophane-type bag partially sticking out of his right hand that was closed in a fist. He then asked Stanfield to place his hands on the car so that he could conduct a pat down search. As Stanfield came within six inches of the car's passenger-side fender, Officer Brown observed him drop a clear plastic bag, which fell on the ground in front of his right foot. Officer Brown quickly did a pat-down for weapons and handcuffed Stanfield before retrieving the object by his feet. He retrieved a small piece of cellophane bag containing two smaller plastic bags that contained a white powder substance he believed to be cocaine. Officer Brown testified that he advised Stanfield of his rights and then asked him if the substance was cocaine or heroin. Stanfield responded that it was cocaine, and a field test, as well as a Sheriff's Office lab test, of the substance was positive for cocaine.
Stanfield argues on appeal that the trial court erred in failing to suppress the evidence. He claims that he was not observed engaging in any criminal activity prior to the stop and frisk and that his mere presence in an area where crime complaints are frequent is not a crime. Further, Stanfield argues that, at the suppression hearing, Officer Brown failed to articulate any particular crime that he had committed, was committing, or about to commit. Stanfield claims that he only changed his location in a "vague avoidance" of the police and that this was not an actual flight to evade the police. Instead he was "[s]imply stepping out of the limelight" when the police officers drove past. In addition, he claims there was nothing in his actions to raise a suspicion that he was in possession of a weapon, and during the hearing, Officer Brown did not recount any reasons or factual basis to support his belief that he possessed a gun or was a danger to anyone. Because he was stopped without reasonable cause, the cocaine that was discarded and seized should have been suppressed, along with his subsequent statement.
The State argues that the police officers had the right to stop and interrogate Stanfield and his companions when they reasonably suspected they were engaged in criminal activities, after they demonstrated furtive behavior by hiding in the darkness from them, in a high crime area where complaints were received for drugs and weapons. The State further contends that Officer Brown had more reasonable suspicion to believe Stanfield was engaged in criminal conduct or might have a gun when he approached the officer with his hands in his pockets, which action necessitated the protective pat down for weapons.
The Fourth Amendment to the United States Constitution and Louisiana Constitution Article I, Section 5 protect individuals from unreasonable searches *715 and seizures.[2] Evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution against the citizen.[3] The exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an unlawful invasion.[4] Statements given during a period of illegal detention are inadmissible, even though voluntarily given, if they are the product of illegal detention and not the result of an independent act of free will.[5] An investigatory stop must be supported by a reasonable suspicion of criminal activity.[6] Reasonable suspicion is something less than probable cause to arrest and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement of an individual's right to be free of government interference.[7] Flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop; however, this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion.[8]
When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer.[9] The determination of reasonable grounds for an investigatory stop, or probable cause for arrest, does not rest on the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action.[10] A trial court's denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression.[11]
Even if the police lack reasonable suspicion to support an investigatory stop, the evidence can be lawfully recovered if the defendant was not "seized" within the meaning of the Federal and State Constitutions at the time he dropped the contraband on the ground.[12] The purpose of the Fourth Amendment is not to eliminate all contact between the police and citizens. Law enforcement officers enjoy the same liberty possessed by every citizen to address questions to other persons.[13] A person is "seized" within the meaning of the Fourth Amendment only when that person either submits to the police show of authority or is physically *716 contacted by the police.[14] A person is seized within the meaning of Article I, Section 5 of the Louisiana Constitution when that person is either "actually stopped" or when an "actual stop" of the person is "imminent."[15] Because the Louisiana Constitution affords a higher standard of individual liberty than the Fourth Amendment, the Louisiana Supreme Court has held that a "seizure" also occurs when an "actual stop" of the individual is "imminent."[16] There exists no bright-line rule for distinguishing between investigatory stops that are characterized by a brief restraint imposed on a lesser showing of reasonable suspicion (Terry[17] stops) and arrests based on probable cause.[18]
A person has not been "actually stopped" unless he submits to a police show of authority or is physically contacted by the police.[19] It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an "actual stop" of the individual is "imminent."[20] Factors to consider in determining whether an actual stop is imminent are the proximity of the police in relation to the defendant at the outset of the encounter, whether the individual has been surrounded by the police, whether the police approached the individual with their weapons drawn, whether the police and/or the individual are on foot or in motorized vehicles during the encounter, the location and characteristics of the area where the encounter takes place and the number of police officers involved in the encounter.[21]
The test for whether a "seizure" has occurred is whether a reasonable person would feel free to decline the officer's request or otherwise terminate the encounter.[22] The police may lawfully seize evidence that is discovered as a result of a person's voluntary actions.[23] When one who is suspected of a crime voluntarily complies with a police request, to his own detriment, he cannot reclaim the rights, which he has waived.[24] Circumstances that might indicate a seizure, even when the person did not attempt to leave are the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.[25]
In the present case, considering the applicable case law, it is clear the initial stop was imminent. Officer Brown testified that he and his partner moved their police car from a distance of fifty feet *717 to within fifteen feet of Stanfield and his companions. The area between the buildings was lit by the officers with both headlights and strobes. Stanfield and the other suspects were ordered to step toward the vehicle and place their hands on it, before Stanfield discarded the contraband. While there were only two officers and their guns were not drawn, it is obvious that Stanfield was not free to elude the encounter. Based on these circumstances, Stanfield could have reasonably assumed that he was seized, or that the stop was imminent or virtually certain before he discarded the contraband. Therefore, this case rests on the legality of the investigatory stop. When the initial investigatory stop is unlawful, the exclusionary rule bars the admission of the subsequent physical and verbal evidence.
Allowing the proper deference to the inferences and deductions of Officer Brown, the totality of the circumstances in the present case lack the necessary indicia of reasonable suspicion. Stanfield and his companions did not flee, but simply moved from the front of the building to an unlit area between two buildings. Their desire not to be observed or disturbed by the police even in a high crime area does not create reasonable suspicion of criminal activity. Officer Brown was unable to articulate sufficient knowledge of the facts and circumstances that led him to believe that Stanfield had committed, was committing, or was about to commit a crime that would justify an infringement of his right to be free of government interference. He was only able to state the tenuous explanation that he was concerned that one of the subjects had a gun. Officer Brown admitted he was personally more sensitive about his safety, because he had a gun pulled on him in this area, in the prior month, and admitted that he suspected one of the subjects had a gun even before Stanfield approached them with his hands in his pockets. Considering the totality of circumstances, the police officers did not have reasonable suspicion initially to stop Stanfield. Consequently, the court erred in denying the motion to suppress as it related to the admission of the subsequent physical and verbal evidence.

ERROR PATENT REVIEW
Our review under LSA-C.Cr.P. art. 920 reveals no errors patent.

DECREE
For the foregoing reasons, we reverse the denial of the motion to suppress, as well as Stanfield's conviction and sentence, and remand the matter for further proceedings.
REVERSED AND REMANDED.
DUFRESNE, J., dissents with reasons.
Considering the totality of the circumstances in this case, I find that the police officers had reasonable suspicion to stop the defendant. Therefore the evidence and statement obtained as a result of the stop should not be suppressed.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965.
[3] State v. Harris, 00-1930 (La.App. 5 Cir. 4/11/01), 786 So.2d 798.
[4] Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441 (1963); State v. Hollimon, 04-1195 (La.App. 5 Cir. 3/29/05), 900 So.2d 999.
[5] State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179.
[6] State v. Massey, supra.
[7] State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
[8] State v. Massey, supra.
[9] State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049; State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 101.
[10] State v. Mitchell, 04-136 (La.App. 5 Cir. 6/29/04), 877 So.2d 1151.
[11] State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 73, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
[12] See, State v. Massey, supra.
[13] Id.
[14] State v. Hill, 01-1372 (La.App. 5 Cir. 5/15/02), 821 So.2d 79.
[15] State v. Tucker, 626 So.2d 707 (La.1993); State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276.
[16] State v. Tucker, supra.
[17] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Cojoe, 2001-2465 (La.10/25/02), 828 So.2d 1101.
[18] State v. Massey, supra.
[19] California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
[20] State v. Tucker, supra.
[21] State v. Tucker, supra; State v. Riggins, 97-1194 (La.App. 5 Cir. 8/25/98), 718 So.2d 569, 571, writ denied, 98-2520 (La.1/15/99), 736 So.2d 206.
[22] State v. Long, 2003-2592 (La.9/9/04), 884 So.2d 1176.
[23] State v. Massey, supra.
[24] Id.
[25] Id.