FREDERICKS HOMBERG WICKER, Judge.
| gDefendant appeals his conviction and sentence for aggravated criminal damage to property. Defendant claims that his sentence was constitutionally excessive and that the evidence presented against him at trial was not sufficient to support his conviction. Defendant also assigns as error the fact that the trial court permitted a bench trial in this matter. Specifically, defendant claims the record does not demonstrate that he knowingly and intelligently waived his right to a jury trial. Further, defendant claims that the trial judge erred in permitting his counsel to waive the right to a jury trial within forty-five days of trial in violation of Louisiana Constitution Article 1, § 17. For the reasons discussed herein, we conditionally affirm defendant’s conviction and sentence and remand this matter to the trial court for an evidentiary hearing to determine whether defendant knowingly and intelligently waived his right to a jury trial. | %F actual Background
On June 8, 2010, Jefferson Parish Detectives Mary Layrisson, Sean Cursain, and Lonnie Senior participated in a narcotics investigation resulting from a confidential informant’s tip that a drug transaction would occur in the Rouse’s parking lot at the intersection of Airline Drive and La-barre Road. The informant disclosed that on June 8, 2010, a black male “with dreads” would arrive at the parking lot between 6:15 p.m. and 6:45 p.m. in a grey colored vehicle with unique colored designs on its side. On that date, the detectives set up surveillance in the parking lot and waited for the subject to arrive. The testimony reflects that during the time frame provided by the informant, a black male with dreads arrived driving a grey vehicle with unique colored designs on its side. The vehicle circled the parking lot and eventually pulled into a parking space. Detectives Cursain and Senior coordinated their approach to conduct an investigatory stop, whereby Detective Cursain would park in a designated parking spot behind the vehicle and Detective Senior would park in front of the subject vehicle to prevent escape. Both detectives testified that they activated the lights on their unmarked patrol units and approached the subject vehicle with their guns drawn. Detective Senior ordered the defendant to exit the subject vehicle. Detective Senior testified that he made eye contact with defendant after exiting his patrol unit and felt compelled to retreat to his unit. Immediately thereafter, the subject vehicle attempted to escape by hitting Detective Senior’s unit and subsequently accelerating until Detective Senior’s unit was pushed back enough to allow defendant to escape. Detective Cursain testified that he prepared to fire into the subject vehicle but refrained from shooting when he noticed a small child in the car. At that point, Detective Cursain and the other officers began a pursuit of the subject vehicle, which traveled down Labarre Road. The subject vehicle came to a stop near Metair-ie Road and [4defendant exited the vehicle and fled on foot. Nikkia Nickles, defendant’s girlfriend, and their two year old son remained in the subject vehicle. After a perimeter of the area was established by officers, defendant was located hiding in a garbage can in a nearby backyard and apprehended.

Procedural History

On July 21, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant, Robert C. Carter, with two counts of aggravated criminal damage to property in violation of La. R.S. 14:55. Defendant pled not guilty to both charges at his arraignment on July 22, 2010. On February 23, 2011, the bill of *1288 information as to count one was amended to reflect that the property at issue sustained $1,881.36 in damages.[1]
The matter proceeded to a bench trial on February 23, 2011 and defendant was found guilty as charged. On March 30, 2011, defendant was sentenced to ten years at hard labor[2] and was ordered to pay restitution in the amount of $1,881.36; the state also filed a multiple offender bill of information against him on the same day. On July 7, 2011, the trial court found defendant to be a second felony offender, vacated his original ten year sentence and resentenced him to twenty years at hard labor giving credit for time served. Defendant filed a Motion to Reconsider Sentence on July 13, 2011, which was denied by the trial court. This timely appeal follows.

Discussion

We will first consider defendant’s claim that the evidence at trial was not sufficient to support his conviction for aggravated criminal damage to property. When the issues on appeal pertain to both sufficiency of the evidence and one or |smore trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. King, 06-554 (La.App. 5 Cir. 1/16/07), 951 So.2d 384, 390, writ denied, 2007-0371 (La.5/4/07), 956 So.2d 600.
Defendant asserts that the evidence presented at trial was insufficient to support his conviction. Defendant does not deny the allegations against him.[3] Rather, defendant claims that his detainment was unlawful and amounted to an arrest; therefore, defendant asserts that his actions in damaging the unmarked police unit were justified under the circumstances. The fact that an offender’s conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. La. R.S. 14:18. Justification is an affirmative defense which the accused must establish by a preponderance of the evidence. State v. Cheatwood, 458 So.2d 907 (La.1984). However, the evidence does not demonstrate that the defendant’s detention in this case amounted to an arrest or was otherwise unlawful. As such, defendant’s actions cannot be justified under the facts of this case.
The testimony reflects that Detective Layrisson received information from a confidential informant, who he had worked with in the past, that a black male with dreads driving a grey colored vehicle with designs on its side would be distributing narcotics in the Rouse’s parking lot at the intersection of Airline Drive and Labarre | fiRoad between 6:15 p.m. and 6:45 p.m. Detective Layrisson testified that during the expected time frame, a grey Pontiac with blue and purple or pink decals on the *1289 side entered the parking lot just as the confidential informant described. Detective Cursain, who also assisted in the investigation, corroborated Detective Layris-son’s testimony and testified that a vehicle matching the informant’s description entered the parking lot but did not appear to be traveling to any particular store, specifically noting that the vehicle drove past businesses including Papa John’s pizza.[4]
Cursain noticed that Detective Senior was “a step or two away” from his unit door when the subject vehicle “lunged forward” in an attempt to escape. At one point, Cursain lost sight of Detective Senior and did not know if he had been hit by the subject vehicle or had become trapped in between the two vehicles. He further stated the subject vehicle then reversed and again accelerated, hitting Detective Senior’s unit to escape. Cursain then approached the subject vehicle by foot and was “about to shoot into the vehicle” when he noticed a small child in the backseat and refrained. Cursain stated that he could not recall if he immediately identified himself as a police officer after exiting his unit, although he was wearing a department issued vest and approached with his gun drawn. Nevertheless, the subject vehicle pushed Detective Senior’s unit to effect the escape, exited the parking lot and proceeded onto Labarre Road.
Detective Senior testified that he wore a police badge on a chain around his neck when he approached defendant’s vehicle with his lights activated and gun drawn. Senior testified he recalled Detective Cur-sain shouting some type of verbal order to defendant, like “Police, get out,” but he could not recall the exact language 17used. When Senior exited his vehicle, he left his car door open; he made eye contact with defendant and got a feeling that defendant was not going to “give up.” Senior immediately retreated back into his unit when suddenly defendant’s vehicle slammed into his unit’s door. Thereafter, defendant’s vehicle reversed and hit Senior’s unit a second time, accelerating until it could escape. Detective Senior testified that he feared for his life as defendant’s vehicle lunged forward into his unit, stating that he “would have been crushed between the two cars” if he had not retreated to his unit. After defendant was apprehended, Detective Senior identified him as the individual driving the vehicle in the parking lot. Detective Senior admitted that drugs were never found in defendant’s vehicle or on his person but noted that his flight afforded him ample opportunity to discard them.
The Fourth Amendment to the United States Constitution and the Louisiana Constitution Article I, § 5 protects individuals from unreasonable searches and seizures. State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968. Law enforcement officers are authorized by La. C. Cr. P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops to interrogate persons reasonably suspected of criminal activity. State v. Sam, 05-88 (La.App. 5 Cir. 5/31/05), 905 So.2d 379, 383, writ denied, 05-2100 (La.3/10/06), 925 So.2d 510. An investigatory stop necessarily involves an element of force or duress and the temporary restraint of a person’s freedom. State v. Broussard, 00-3230 (La.5/24/02), 816 So.2d 1284, 1286. There is the complete restriction of movement in an investigatory stop, but for a shorter period of time than an arrest. Id. at 1287. An investigatory stop is reasonable even when *1290 the police block a vehicle to prevent its occupant from leaving and approach with weapons ready or even drawn. Id. at 1288-89.
1 ^Reasonable suspicion is required for an investigatory stop. State v. Nelson, 02-65 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 800, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627. Reasonable suspicion is something less than probable cause to arrest and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual’s right to be free from government interference. Massey, supra. An informant’s tip may create reasonable suspicion necessary to justify an investigatory stop under the totality of the circumstances. Id. An informant’s past record for accuracy and reliability is only one factor taken into account when determining the reliability of the tip in question. State v. Austin, 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 879, writ denied, 05-0830 (La.11/28/05), 916 So.2d 143. An independent police investigation that corroborates details of the informant’s tip is valuable in applying the totality of the circumstances analysis. State v. Clay, 06-37 (La.App. 5 Cir. 4/25/06), 930 So.2d 1028, 1032. The record in this case supports a finding that the confidential informant’s tip contained predictive information indicating that the informant had “inside information” or a “special familiarity” with defendant’s affairs. Nelson, 02-65 (La.App. 5 Cir. 6/26/02), 822 So.2d at 803.
In the instant case, the detectives corroborated information from the confidential informant, who they had used in the past, to support a reasonable belief that the informant had reliable information regarding defendant’s activity. The informant gave the police the suspect’s physical description, including his race, gender, and hairstyle. The informant was also able to describe the vehicle the suspect would be driving — a grey vehicle with colored designs on the side. Further, the informant was able to predict the suspect’s future behavior by correctly predicting the specific place and time, within 30 minutes, that the suspect would arrive with contraband. As the detectives surveyed the situation, they ^corroborated the informant’s information when they observed a man, fitting the description of the suspect, driving a vehicle matching the informant’s description to the expected location within the specified time frame. Therefore, considering the totality of the circumstances in this case, we find the officers had reasonable suspicion to conduct an investigatory stop.
Defendant contends that the actions of the officers blocking his vehicle to attempt to prevent his escape amounted to an arrest. Defendant asserts he was arrested when the police approached by blocking his vehicle without announcement with their guns drawn.
The vast majority of courts have held that police actions in blocking a suspect’s vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest per se. United States v. Edwards, 53 F.3d 616, 619 (3rd Cir.1995). An investigatory stop necessarily involves an element of force or duress and the temporary restraint of a person’s freedom. There is the complete restriction of movement in an investigatory stop, but for a shorter period of time than an arrest. State v. Anthony, 07-204 (La.App. 5 Cir. 11/27/07), 971 So.2d 1219,1225, writ denied sub nom., State ex rel. Anthony v. State, 2008-0338 (La.1/16/09), 998 So.2d 98 and State v. Broussard, 00-3230 (La.5/24/02), 816 So.2d 1284, 1286. Investigatory stops may be accompanied by features normally associated with an arrest, i.e., use of drawn weapons. An investigatory stop is reasonable even when the police block a vehicle *1291 to prevent its occupant from leaving and approach with weapons ready or even drawn. State v. Anthony, 07-204 (La.App. 5 Cir. 11/27/07), 971 So.2d 1219, 1225, writ denied sub nom. State ex rel. Anthony v. State, 2008-0338 (La.1/16/09), 998 So.2d 98. Because an officer’s view of a suspect seated in a car is always partially obscured, the officer is at a disadvantage when he approaches the occupant. United States v. Edwards, 53 F.3d |10616, 619 (3rd Cir. 1995). Furthermore, guns and drugs frequently go hand-in-hand. State v. Warren, 05-2248, p. 18 (La.2/22/07), 949 So.2d 1215, 1229.
Under the facts of this case, we find that the officers had reasonable suspicion to conduct an investigatory stop and that the stop conducted in this case did not amount to an arrest. As discussed above, defendant does not deny causing damage to the officer’s unmarked patrol unit and does not assert that the state failed to prove the elements of the crime of aggravated criminal damage to property. At trial, defendant testified that he did in fact cause the damage demonstrated by photographs of Detective Senior’s unit introduced at trial. As such, we find the evidence presented at trial was sufficient to support defendant’s conviction for aggravated criminal damage to property.
Defendant also asserts that his sentence is unconstitutionally excessive. He argues that his twenty year multiple offender sentence is excessive and further claims that the trial judge failed to consider mitigating factors under La. C. Cr. P. art. 894.1. In particular, defendant claims that the trial court failed to consider (1) that the officer was not injured, (2) there was only minimal damage to the officer’s vehicle, and (3) although defendant had several prior felony convictions, he since those convictions had a child and returned to school to learn a trade.
It is first noted that defendant’s argument concerning the trial court’s failure to articulate-the factors considered for sentencing as required by La. C. Cr. P. art. 894.1 lacks merit. Compliance with sentencing guidelines pursuant to La. C. Cr. P. art. 894.1 is not required when the sentence imposed is statutorily prescribed under the Habitual Offender Law. State v. Howard, 10-541 (La.App. 5 Cir. 4/26/11), 64 So.3d 377, 385, writ denied, 2011-1073 (La.12/2/11), 76 So.3d 1173. In considering defendant’s argument that his sentence is constitutionally excessive, we note that an excessive punishment or sentence is prohibited under the Eighth |n Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Crawford, 05-494, p. 6 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, 669; State v. Jones, 05-735, p. 6 (La.App. 5 Cir. 2/27/06), 924 So.2d 1113, 1116, writ denied, 07-0151 (La.10/26/07), 966 So.2d 567; State v. Riche, 608 So.2d 639, 640 (La.App. 5 Cir. 1992), writ denied, 613 So.2d 972 (La.1993). In reviewing a sentence for exces-siveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Taylor, 06-839, p. 3 (La.App. 5 Cir. 3/13/07), 956 So.2d 25, 27, writ denied, 06-0859 (La.6/15/07), 958 So.2d 1179. A trial court is afforded great discretion in determining sentences and sentences within the statutory limit will not be set aside as excessive absent clear abuse of that broad discretion. State v. Crawford, 05-494 at p. 6, 922 So.2d at 669. In reviewing a trial court’s sentencing discretion, three factors are consid *1292 ered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Allen, 03-1205 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 880.
The appellate court can look to the record for support of the defendant’s sentence and, if the record supports defendant’s sentence, the appellate court shall not set aside the sentence for excessiveness. State v. Jones, 05-735 at p. 8, 924 So.2d at 1117; LSA-C.Cr.P. art. 881.4(D); State v. Robinson, 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, 868, writ denied, 2008-1086 (La.12/19/08), 996 So.2d 1132. The issue on appeal is whether the trial court abused its discretion, not | ¾ ¿whether another sentence might have been more appropriate. Id.; State v. Crawford, 05-494 at p. 8, 922 So.2d at 670-71.
In the present case, defendant was adjudicated a second felony offender based on an underlying conviction of aggravated criminal damage to property. As a matter of law, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Howard, 10-541 (La.App. 5 Cir. 4/26/11), 64 So.3d 377, 384, writ denied, 2011-1073 (La.12/2/11), 76 So.3d 1173. As a second felony offender, defendant faced a habitual offender sentencing range between 7 ½ and 30 years. See LSA-R.S. 15:529.1(1); LSA-R.S. 14:55.10.[5] Therefore, defendant’s sentence of 20 years is well within the sentence range and is supported by comparison of similar sentences for similar crimes. See State v. Lacayo, 10-1119 (La.App. 1 Cir. 2/11/11), 57 So.3d 609, writ denied, 11-0517 (La.9/30/11), 71 So.3d 281.
In the present case, the record reflects that defendant has an extensive criminal history and was on home incarceration for possession of marijuana and a firearm at the time of the incident at issue on appeal. At defendant’s sentencing hearing, the trial judge noted the seriousness of the crime at issue specifically finding that is was clearly foreseeable that defendant could have caused bodily injury to Detective Senior when he hit the officer’s vehicle. At trial, defendant testified that he was frightened by the approach of the unmarked vehicles and his immediate reaction was to seek escape to save his life. Defendant further testified that he previously witnessed the murder of an individual in his car with his family and the approach of the unmarked vehicles raised anticipation of such an event. At |lsthe sentencing hearing, the trial judge discussed the credibility of defendant’s testimony as well as the testimony of Nikkia Nickles and stated:
[I]t simply doesn’t wash with this Court to suggest that Mr. Carter, who has an admitted criminal history, who admits to being apparently on house arrest, who admits to voluntarily absenting himself from the very arrested place he’s supposed to remain, a fellow who would share with us his history of experience which made him nervous, which might *1293 explain his panic. I find none of that to be persuasive in terras of mitigation. Quite the contrary, the evidence coupled with the almost complete unworthiness of belief attributed to the mother of Mr. Carter’s son makes me think that they knew exactly or he knew exactly where he was, what was happening and intended not to be stopped by any means.
For the reasons discussed above, we find the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive. Considering the trial court’s careful review of the testimony presented, the serious nature of the offense, and defendant’s extensive criminal history, we find the trial judge did not abuse his wide discretion in sentencing defendant to twenty years as a second felony offender.
Defendant’s next assignment of error asserts that the trial judge erroneously permitted his counsel to waive the right to a jury in this case within forty-five(45) days of trial in violation of Louisiana Constitution Article I, § 17.
La. Const. Art. I, § 17 provides in pertinent part, “[e]xcept in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury but no later than forty-five days prior to the trial date and the waiver shall be irrevocable.” We need not opine whether the trial court erred in setting a judge trial in violation of La. Const. Art. I, § 17 in this case because the record reflects that both parties waived this argument as neither the state nor the defense objected to the setting of a bench trial in this matter and in fact acquiesced in the bench trial date. See State |14v. Chinn, 11-2043 (La.2/10/12), 92 So.3d 324. Accordingly, we decline to consider this issue.
Defendant also asserts that the record in this case does not reflect that he knowingly and intelligently waived his right to a jury trial. Upon review of the record, we agree and find that the record does not demonstrate a valid jury waiver in this case. Where no valid jury waiver is found in the record, Louisiana courts have traditionally set aside the defendant’s conviction and remanded for a new trial. State v. Williams, 404 So.2d 954 (La.1981); State v. Lokey, supra. However, in State v. Nanlal, 97-0786 (La.9/26/97), 701 So.2d 963, the Louisiana Supreme Court set out a procedure by which the case is initially remanded to the trial court for an eviden-tiary hearing on the question of whether the defendant validly waived the right to a jury trial. If the evidence shows that the defendant did not make a valid waiver, the trial court must set aside the conviction and sentence and grant the defendant a new trial. The Supreme Court reserved the defendant’s right to appeal any adverse ruling of the waiver issue. This Court has followed the procedure set forth in Nanlal. See State v. Lokey, supra; State v. Herrera, 98-677 (La.App. 5 Cir. 2/10/99), 729 So.2d 75, 80. Thus, we remand this matter to the trial court for an evidentiary hearing to determine if defendant validly waived his right to a jury trial.

ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to La. C. Cr. P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The original commitment reflects that defendant received credit for time served and was notified of the time limit within which to take an appeal; however, the transcript is silent. Generally, the transcript prevails. State v. Lynch, 441 So.2d |15732, 734 (La.1983). However, pursuant to La. C. Cr. P. art. 880, credit for time served is self-operating. State v. *1294 Johnson, 05-180, pp. 10-11 (La.App. 5 Cir. 11/29/05), 917 So.2d 576, 582, writ denied, 06-1254 (La.12/15/06), 944 So.2d 1282. Further, defendant did in fact file an appeal within thirty days of original sentencing and was later notified during his multiple offender sentencing of the prescriptive period for filing an appeal. Therefore, any error in this regard is harmless.
The record also reflects that defendant was not properly advised of his multiple offender rights, including his right to a hearing and right to remain silent. La. R.S. 15:529.1(D)(l)(a) provides that the trial court shall inform a defendant of allegations contained in the bill of information and of his right to be tried as to the truth thereof according to law. Implicit in this directive is the additional requirement that the defendant be advised of his constitutional right to remain silent. State v. Hart, 10-905, p. 5 (La.App. 5 Cir. 5/10/11), 66 So.3d 44, 47, writ denied, 11-1178 (La.11/18/11), 75 So.3d 448. A trial court’s failure to advise a defendant of his right to a habitual offender hearing or his right to remain silent is considered harmless error when the defendant’s habitual offender status is established by competent evidence offered by the state at a hearing. In the instant ease, defendant’s multiple offender status was established by competent evidence offered by the state at a hearing rather than by an admission of the defendant. Consequently, the failure of the trial court to advise the defendant of his rights is harmless error and does not require corrective action. La. C. Cr. P. art. 921; State v. Allen, 638 So.2d 394, 403, writ granted, 94-1754 (La.11/29/94), 646 So.2d 390 and writ recalled, 94-1754 (La.3/16/95), 651 So.2d 1343.
It appears that defendant was not arraigned on the multiple bill of information. However, defendant proceeded to the multiple offender hearing |1(iwithout objection. In State v. Harris, 01-1380, p. 3 (La.App. 5 Cir. 4/30/02), 817 So.2d 387, 389, this Court found that a defendant waives his right to admit or deny the allegations against him in a multiple offender bill if he proceeds to the multiple offender hearing without objection. Therefore, no corrective action is required.
The record further reflects that the trial court failed to restrict the benefits of suspension and probation as required under La. R.S. 15:529.1. However, such conditions are deemed to exist by operation of law under La. R.S. 15:301. Thus, corrective action is not required. State v. Williams, 00-1725, pp. 14-15 (La.11/28/01), 800 So.2d 790, 801.

CONCLUSION

Accordingly, for the reasons set forth above, defendant’s conviction and sentence are conditionally affirmed and this matter is remanded for an evidentiary hearing to determine whether defendant knowingly and intelligently waived his right to a jury trial. See State v. Howard, 09-928 (La.App. 5 Cir. 5/25/10), 37 So.3d 1099, 1108 and State v. Terrase, 02-1009 (La.App. 5 Cir. 2/25/03), 841 So.2d 947.

CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED; REMANDED FOR EVIDENTIARY HEARING

. On the same day, the state entered a nolle prosequi on count two.

. Defendant was also convicted of resisting arrest and sentenced to serve concurrently six months in the Jefferson Parish Correctional Center.

.Defendant was convicted of aggravated criminal damage to property. La. R.S. 14:55 defines Aggravated criminal damage to property as "the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion.”

. Defendant and Nikkia Nickles testified that they planned to order pizza from Papa John’s pizza. Defendant further admitted in his testimony that he was out past his curfew for house arrest but planned to quickly order pizza and return home.

. LSA-R.S. 14:55 provides in pertinent part: "Whoever commits the crime of aggravated criminal damage to property shall be fined not more than ten thousand dollars, imprisoned with or without hard labor for not less than one nor more than fifteen years, or both.” LSA-R.S. 15:529.1(1) states, "If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.” In the present case, "not less than one-half the longest term” is 7 ⅛ years and "not more than twice the longest term” is 30 years.