948 So.2d 1106 (2006)
STATE of Louisiana
v.
Joseph VANCE.
No. 06-KA-465.
Court of Appeal of Louisiana, Fifth Circuit.
December 12, 2006.
*1107 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Megan L. Gorman, Donald A. Rowan, Jr., Trial *1108 Counsel Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
The Defendant, Joseph Vance, appeals from his guilty plea convictions on two felony counts and his respective sentences, in the custody of the Department of Corrections. For the reasons which follow, we affirm the convictions and sentences, and remand.
On August 19, 2004, the Jefferson Parish District Attorney's Office filed a bill of information charging the Defendant, in count one with possession of a firearm by a convicted felon[1], a violation of La. R.S. 14:95.1, and in count two with second offense possession of marijuana, a violation of La. R.S. 40:966(C). At his arraignment, the Defendant pled not guilty. The Defendant filed a Motion to Suppress Confession, Identification, and Physical Evidence. On April 20, 2006, after a hearing, the trial court denied the motion to suppress.
At the motion to suppress hearing, both Officer Vernon Jones and Deputy Ronald Green testified that, on April 14, 2005, the day the Defendant was arrested, they were working a detail assignment authorized by the State Housing Authority to prevent trespassing in a public housing subdivision in the Betty Street area. Deputy Green stated that trespassers were coming into the subdivision to sell narcotics. As part of the detail, the officers were given a list of the subdivision's residents to check against the identification of people in the area. Anyone entering the subdivision was supposed to be a resident, visiting a resident, or have business in the area. Deputy Green testified that the Defendant, whom he identified in court, initially came to his attention while he was riding his bicycle toward the officers. It was between 5:30 and 7:00 p.m. He testified that the Defendant was not in violation of any statutes.
Officer Jones was more specific, testifying that the Defendant was riding his bicycle in the street coming across Lapalco Boulevard to Betty Street, from the Lincolnshire area. He noted that there was no sidewalk from Betty Street and Lapalco Boulevard, until you reach a certain section close to where he was standing. He testified that the defendant was "acting in a suspicious manner, by just looking, turning around and looking, like backwards," as he headed towards the officers. Both officers testified that the Defendant had an unobstructed view of them as he approached. Officer Jones testified that he did not think the Defendant was looking back to avoid cars. He stated that, based on his twenty years of experience, especially in the Lincolnshire area, the behavior was indicative of drug activity. He described the Lincolnshire area as "a drug-infected area, and from my experience, they take those bikes, those bicycles to come in the area and sell drugs." He testified that the Defendant was coming from Lincolnshire. He decided to stop the Defendant for identification to see if he resided in the Betty Street area. Deputy Green admitted that the street was not an area included in the directive from the Housing Authority and was not part of the subdivision's property, but rather a public *1109 place where people could walk and ride their bikes without trespassing.
Deputy Green testified that as the Defendant got within approximately ten feet of the officers, Officer Jones called to the Defendant "man, come over here for a second." He testified that it was not in the nature of an order. Both officers agreed that when they asked the Defendant to come over to them, the Defendant stopped, turned his bike around, and "took off." Deputy Green described the Defendant's actions as taking off "kind of fast." Officer Jones testified that the Defendant "fled." "He turned around with his bicycle and started peddling fast."
Deputy Green testified that, when the Defendant took off, he started to follow on foot but when Officer Jones got in his vehicle to follow the Defendant he also got in his unit and chased the Defendant. The Defendant kept riding as they called for him to come back. Officer Jones testified that he proceeded behind the Defendant in his police vehicle when the Defendant turned and went back in the direction from which he had come. As the Defendant was riding away, the chain slipped off of his bicycle. The Defendant then dropped the bicycle and ran across Lapalco Boulevard into oncoming traffic. Officer Jones testified that when the Defendant ran across Lapalco Boulevard, he got out of his vehicle and ran after him. The Defendant slipped and slid on the ground. Deputy Green apprehended the Defendant on the ground. The Defendant's hands were reaching underneath his stomach. Deputy Green cuffed the Defendant for his safety, concerned that the Defendant was reaching for a weapon in his waistband. Deputy Green admitted that he detained the Defendant even though he still did not know that the Defendant had committed a crime. Deputy Green testified that he "didn't read him his rights when he cuffed him, actually, Deputy Jones read him his rights."
The officers' testimony conflicted on the pat-down. Deputy Green testified that Officer Jones questioned the Defendant about why he ran, then rolled him on his side and patted him down. Officer Jones felt something in the Defendant's waistband he believed to be a weapon. Officer Jones recovered a loaded .25 caliber automatic weapon and two separate bags of a green "vegetable-like substance" that later tested positive for marijuana.
Officer Jones testified that "Deputy Green rolled the Defendant over and handcuffed him and brought him to the car, did a pat down search, [in] which we retrieved a weapon and the drugs." Officer Jones testified that he did not pat the Defendant down while he was lying on the ground or retrieve any weapon. Officer Jones admitted that he conducted the search for the weapon incident to the Defendant's arrest, and that he did not read the Defendant his rights until after he recovered the weapon and placed the Defendant under arrest. When asked what the Defendant was under arrest for prior to finding the gun, he replied, "Well, we wanted to find out, you know, what was going on, why was he running, why did he have his hands in his waistband."
The trial judge denied the motion to suppress, finding that "the officers were on a detail, and hired by the property owners to keep out loiters [sic], and they had the right to question people to see if they belonged in that neighborhood or not."
Following the denial of his motion to suppress, the Defendant withdrew his not guilty plea on both counts, and entered a plea of guilty as charged on both counts pursuant to State v. Crosby, 338 So.2d 584 (La.1976). The Defendant reserved his right to appellate review of the trial court's denial of his motion to suppress. The trial *1110 court thereafter sentenced the Defendant on count one to ten years in the custody of the Department of Corrections, without benefit of parole, probation, or suspension of sentence, and on count two to five years with the Department of Corrections. Both sentences were ordered to run concurrently with credit given for time served. It is from these convictions and sentences that the Defendant appeals.
On appeal the Defendant argues that the trial court erred in denying his motion to suppress because the attempted stop was without reasonable suspicion or probable cause. He claims that the police had no right to stop him, because he was in a public street, not trespassing. The Defendant notes that the officers testified that he was not doing anything wrong before the officers attempted to stop him.
The State argues that the officers did not initially attempt to detain the Defendant and force him to submit to questioning by them. Instead, the State cites State v. Lewis, 00-3136 (La.4/26/02), 815 So.2d 818, to support its contention that the initial encounter was not an investigatory stop, but rather only a request by the officers that the Defendant come over to the police vehicle to speak with them "for a second," because he appeared nervous. The officers did not indicate in any fashion that the Defendant was not free to ignore their request and leave. Therefore, the State argues there was no improper investigatory stop. The State contends that the officers did not pursue the Defendant, even after he "fled from [them] on his bicycle," until he fled into oncoming traffic, raising their suspicion that he might be involved in criminal activity. The State suggests that the officers' training and experience, the high crime nature of the area, especially narcotics trafficking, the nervousness of the Defendant, and his flight into oncoming traffic, all taken together, provided reasonable suspicion to suspect that the Defendant was engaged in criminal conduct.
The Fourth Amendment to the United States Constitution and the Louisiana Constitution Article I § 5 protects individuals from unreasonable searches and seizures. State v. Massey, 03-1166, p. 4 (La.App. 5th Cir.1/27/04), 866 So.2d 965, 968. The United States Constitution's Fourth Amendment is not intended to eliminate all contact between the police and citizens. State v. Massey, 866 So.2d at 971. Law enforcement officers have the same liberty possessed by every citizen to address questions to other persons. State v. Stanfield, 05-839, p. 4 (La.App. 5th Cir.3/14/06), 925 So.2d 710, 715. "An officer's request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave." State v. Lewis, 815 So.2d at 820.
"A person is seized within the meaning of Article I, Section 5 of the Louisiana Constitution when that person is either `actually stopped' or when an `actual stop' of the person is `imminent.'" State v. Stanfield, 925 So.2d at 716. "The test for such a seizure is an objective one, and it is whether the officer's words and actions would have conveyed to a reasonable person that he was being ordered to restrict his movement." State v. Massey, 866 So.2d at 972.
When the police come upon a person with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, an "actual stop" of the person is "imminent." State v. Stanfield, 925 So.2d at 716. The factors to consider in determining whether an actual *1111 stop is imminent are the proximity of the police in relation to the defendant at the outset of the encounter, whether the person has been surrounded by the police, whether the police approached the individual with their weapons drawn, whether the police and/or the individual are on foot or in motorized vehicles during the encounter, the location and characteristics of the area where the encounter takes place, and the number of police officers involved in the encounter. Id.
The decision in Illinois v. Wardlow, 528 U.S. 119, 124-125, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), however, makes clear that flight is not the equivalent of a mere refusal to cooperate for purposes of the Fourth Amendment:
Headlong flightwhenever it occursis the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. . . .
Such a holding is entirely consistent with our decision in [Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)], where we held that when an officer without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. And any `refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.' [Florida v. Bostick, 501 U.S. 429, at 437, 111 S.Ct. 2382, at 2387, 115 L.Ed.2d 389 (1991)]. But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not `going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.
In the present case, with or without reasonable suspicion, Officers Green and Johnson, from approximately ten feet away, had the right to ask the Defendant to come over toward them "for a second." Officer Johnson's request, in a public area and without any greater show of authority, did not transform the encounter into a forcible detention. Because the Defendant was free to leave, the question by the officers did not "provoke" the Defendant to flight. It was not until the Defendant stopped his approach toward the officers on his bicycle, turned it around and "took off' in "headlong flight" that the officers, by their pursuit, indicated that a stop might be imminent. At that point, the totality of the circumstances known to the officers at the time, including the knowledge that the area was prone to drug trafficking, the Defendant's suspicious behavior understood by the officers to be consistent with drug trafficking as a result of their training and experience, and, most importantly, the defendant's unprovoked headlong flight from the officers into oncoming traffic, gave rise to reasonable suspicion for an investigatory detention. The detention and pat down for safety reasons following the Defendant's fall was reasonable to protect the officers and members of the public. The Defendant held his hand under his body near his waistband as in a manner recognized by the officers as consistent with the behavior of one carrying a weapon.
Therefore, we find no error in the trial court ruling denying the Defendant's motion to suppress.
*1112 ERROR PATENT DISCUSSION
The defendant has requested an error patent review. However, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920 regardless of whether a defendant makes such a request. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). Our review reveals one error requiring corrective action by this Court.
We note from the sentencing transcript that the trial judge did not inform the Defendant that he had two years after his judgment of conviction and sentence became final to seek post-conviction relief. La.C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. Therefore, we remand the case to the trial court and order the court to inform the Defendant of the appropriate prescriptive period for filing for post-conviction relief by sending appropriate written notice to the Defendant within ten days of the rendition of this Court's opinion and by filing written proof in the record that the Defendant received the notice. State v. Hutchinson, 02-60, p. 10 (La.App. 5th Cir.5/15/02), 817 So.2d 500, 509.
Accordingly, for the foregoing reasons, we affirm the Defendant's guilty plea convictions for possession of a firearm by a convicted felon and possession of marijuana and his respective sentences to ten year without benefit of parole, probation or suspension of sentence and five years with the Department of Corrections, to be served concurrently, with credit given for time served. The case is remanded to the district court to provide proof in the record of the Defendant's receipt of appropriate written notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED; CASE REMANDED.
WICKER, J., Dissents.
WICKER, J., dissents.
I respectfully dissent from the majority and, for the following reasons, would reverse the trial court's denial of defendant's motion to suppress evidence.
In my view, the actions of the police officers in this case constituted an investigatory stop, and the State's reliance on State v. Lewis, 00-3136 (La.4/26/02), 815 So.2d 818, cert. denied, 537 U.S. 922, 123 S.Ct. 312 154 L.Ed.2d 211 (2002) is misplaced. Further, I believe the majority opinion extends the law beyond the holding in Lewis to permit an unconstitutional stop of this defendant.
Defendant herein was, in fact, seized within the meaning of the Fourth Amendment when Officer Jones told defendant to come to him. The officers in this case did not simply step into defendant's path and begin asking for basic information, as did the officers in Lewis. Rather, Green and Jones exhibited a show of official authority by ordering the defendant to move to one of the police vehicles, conveying that compliance with their request was mandatory and that defendant was not free to leave.
When first observed, defendant was riding his bicycle on a public street that was not part of the subdivision the officers were assigned to monitor. Officers testified that defendant was not violating any statutes when observed. The only justification given by officers for the stop was the simple fact that defendant looked back while riding his bicycle toward the officers. Any responsible cyclist looks behind him periodically while riding on a public street in order to check for passing vehicles and *1113 other hazards. Not to do so would be to risk serious injury. Unlike the defendant in Lewis, defendant in this case did not act nervous or change the manner of his approach in order to avoid the officers.
The officers' testimony does not show they had a particularized or objective basis for suspecting defendant had committed or was about to commit a crime. Since, as the officers conceded, defendant was not trespassing, the initial stop was based on an un-particularized hunch that defendant was involved in narcotics activity because he was riding a bicycle, and he was coming from the direction of Lincolnshire, a known high crime area. An un-particularized hunch based on the officer's subjective beliefs or attitudes instead of a completely objective evaluation of the circumstances is insufficient to establish reasonable grounds to stop an individual. State v. Barney, 97-777 (La.App. 5 Cir. 2/25/98), 708 So.2d 1205, 1207.
Because the officers did not have reasonable suspicion to stop defendant, he was free to turn his bicycle around and ride away from them. Any evidence seized from defendant was the fruit of an illegal stop, and should have been suppressed. Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 415-416, 9 L.Ed.2d 441 (1963); State v. Stanfield, 05-839 (La.App. 5 Cir. 3/14/06), 925 So.2d 710, 717. I would hold that the trial court erred in denying defendant's motion to suppress evidence.
NOTES
[1] The Defendant had previously been convicted of possession with intent to distribute cocaine, a violation La. R.S. 40:967(A).