MARC E. JOHNSON, Judge.
| ^Defendant, Donald K. Swanzy, appeals his convictions for two counts of theft over $500 on the basis there was insufficient evidence.[1] For the reasons that follow, we affirm in part and reverse in part.
Defendant was charged in a bill of information on January 26, 2009 with two counts of theft over $500 in violation of La. R.S. 14:67. The State later amended the bill to specifically charge defendant with theft by means of fraudulent conduct, practices or representations. He proceeded to trial on August 20, 2009 before a six-person jury. After a two-day trial, the jury found defendant guilty as charged on both counts. The trial court subsequently sentenced defendant to six years at hard labor on each count, which was suspended in favor of two years active probation and three years inactive probation.[2]

\ .FACTS

In July 2008, Senior Trooper Andrew Pratt, with the Louisiana State Police, was contacted by a detective with the New Orleans Police Department about recovering equipment that was allegedly stolen from the TwiRopa construction site on Tchoupitoulas St. in New Orleans in 2007. Trooper Pratt met with Terry Kutcher, the owner of the equipment who provided ownership documents for an excavator. Mr. Kutcher informed Trooper Pratt that the excavator was located at Dale’s Wrecker Service in Gretna. On July 24, 2008, Trooper Pratt went to Dale’s and recovered the excavator from Lloyd Michell, the owner of Dale’s, and returned it to Mr. Kutcher.
*500 Mr. Michell testified he helped Charles McGowan purchase the excavator from defendant for $25,000 in November 2007. Mr. McGowan testified he saw the excavator sitting across the street from where he was working a job at the Harvey Canal on Destrehan Blvd. and inquired about it. According to Mr. McGowan, defendant initially said it was not for sale because he was waiting for some letter before he could sell it. A few weeks later, defendant approached Mr. McGowan and said he was ready to sell the excavator. Mr. McGowan then bought the excavator and was issued a bill of sale as a receipt.
Mr. Kutcher, who is from Oklahoma, explained he is the owner of Chisholm Trail Construction, a company that performs dirt construction and demolition. His company came to Louisiana after Hurricane Katrina to perform clean-up and remedial work. In June 2007, Mr. Kutcher and defendant entered into a contract for demolition of the TwiRopa building. Under the contract, Chisholm Trail Construction was to provide all equipment necessary to demolish the building. The excavator at issue was one of the pieces equipment Chisholm Trail Construction provided for the job.
|4One month later, the business dealings between Mr. Kutcher and defendant began to deteriorate over unpaid invoices. On July 25, 2007, defendant removed the excavator, along with other equipment, from the TwiRopa site. An employee of Chisholm Trail Construction, who was staying in a trailer at the job site, informed Mr. Kutcher of the removal of the excavator and contacted the police, who indicated it was a civil matter. According to the employee, defendant took the excavator “down the road” and “locked it up.” Mr. Kutcher testified the excavator was removed from the TwiRopa job site without permission. He stated that nothing in the TwiRopa contract allowed for the seizure of equipment due to a dispute involving the contract.
In December 2008, a little over four months after Trooper Pratt assisted in the recovery of the excavator, Mr. Kutcher contacted Trooper Pratt about an issue involving one of his bulldozers. Mr. Kutcher explained that he had taken the bulldozer to Diesel Truck Service, a business owned by defendant, in April 2007 to get an estimate for repairs. However, defendant subsequently sold the bulldozer to Mr. Michell in December 2007 for $6,500. The police ultimately recovered the bulldozer in December 2008 from Mr. Michell.
According to Mr. Michell, defendant stated the owner had abandoned the bulldozer and defendant had a lien on it because the owner had failed to pay for repairs defendant made to the bulldozer. Mr. Michell testified defendant further stated he had the proper paperwork permitting him to sell the bulldozer. When Mr. Michell learned the police were going to seize the bulldozer as stolen property, Mr. Michell contacted defendant about the documentation he had that allowed defendant to sell the bulldozer. In response, defendant provided Mr. Michell with documents showing he placed advertisements in the newspaper regarding the bulldozer and unpaid invoices. Defendant further offered a document showing he ^reported the repairs and storage of the bulldozer to Towing and Recovery Professionals of Louisiana (TRPL).[3]
*501 Mr. Kutcher stated he received a letter from defendant in June 2007 demanding payment for repairs made on the bulldozer, as well as the excavator. However, Mr. Kutcher testified he never authorized any repairs to either piece of equipment.
Upon seizure of the equipment by the police, defendant refused to refund Mr. McGowan and Mr. Michell’s money. Defendant was subsequently arrested and charged with theft over $500 relating to the sale of the excavator to Mr. McGowan and the bulldozer to Mr. Michell.

DISCUSSION

In defendant’s sole assignment of error, he asserts the evidence was insufficient to convict him of theft. He contends the State failed to prove two essential elements for theft: (1) a taking or misappropriation, and (2) specific intent to defraud. Defendant argues he was the legal owner of the bulldozer and excavator and, thus, he could not have misappropriated the equipment. He also maintains there was nothing fraudulent about the sale of the equipment to Mr. McGowan and Mr. Mic-hell. Defendant further asserts this matter involved a dispute over a contract for repairs to the equipment and that he involved an attorney to resolve the dispute.. He contends he followed the required procedure under La. R.S. 9:4502 to obtain a lien on the equipment and properly sold the equipment as allowed by law.
|fiIn reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, direct or circumstantial or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La. 1/7/11), 52 So.3d 885.
Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts. State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. The rule as to circumstantial evidence is “assuming every fact to be proved that the evidence ténds to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. On appeal, the reviewing court does not determine if another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. Instead, the appellate court must evaluate the evidence in a light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Durand, 07-4 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, 1034, writ denied, 07-1545 (La.1/25/08), 973 So.2d 753. The reviewing court must not impinge on the jury’s finding of fact, in a criminal case, except to the extent necessary to guarantee constitutional due process. State v. Major, 03-3522 (La.12/1/04), 888 So.2d 798, 802.
Defendant was convicted of theft in violation of La. R.S. 14:67. La. R.S. 14:67(A) defines theft as follows:
17Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or tak *502 ing, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
As such, in order to.support a conviction for theft pursuant to La. R.S. 14:67, the State is required to prove, that defendant misappropriated or took, a thing of value, that belonged to another, without the consent of the owner, and that he had the intent to deprive the owner permanently of that which was misappropriated or taken. State v. Carmen, 08-478 (La.App. 5 Cir. 1/27/09), 3 So.3d 587, 591. In addition, the State is required to prove the value of the stolen property, since the determination of the severity of the offense and the degree of punishment upon conviction depends upon the value of the stolen goods. State v. Ramsdell, 06-644 (La.App. 5 Cir. 12/27/06), 949 So.2d 508, 511. In this case, the State was required to prove that the value of the goods was over $500.
Theft is a crime of specific intent. State v. Patterson, 11-158 (La.App. 5 Cir. 11/29/11), 78 So.3d 855, 859. Specific criminal intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. State v. Joseph, 09-400 (La.App. 5 Cir. 12/29/09), 30 So.3d 157, 165. A reasonable and honest belief that one owns an interest in property precludes a finding that he intended to take the property of another. State v. Henry, 46,406 (La.App. 2 Cir. 8/10/11), 73 So.3d 958, 966; State v. Rabalais, 99-623 (La.App. 3 Cir. 1/26/00), 759 So.2d 836, 841-42.
We find the evidence sufficient to prove defendant committed theft involving the excavator. Defendant removed the excavator from a construction |ssite without permission from the owner or anyone at the construction site. Mr. Gooch, an employee of Chisholm Trail Construction, testified he specifically told defendant he could not take the equipment, but defendant took it anyway. The fact that defendant attempted to obtain a repairman’s lien on the excavator after seizing it does not negate the fact he took the excavator without permission with the intent to permanently deprive the owner of the excavator. He then misrepresented to Mr. McGowan that he had the authority to sell the excavator, which he took without permission. Defendant further refused to refund Mr. McGowan the $25,000 he paid for the excavator when defendant’s authority to sell the excavator was questioned and the excavator was seized as stolen property. We find a reasonable juror could find from these facts that defendant had the requisite specific intent to commit theft.
.[5] Conversely, we find the evidence insufficient to convict defendant of theft involving the bulldozer. In particular, we find the evidence does not sufficiently establish defendant possessed the requisite specific intent to commit theft.
The record shows Mr. Kutcher dropped off the bulldozer to defendant to obtain an estimate for repairs. Although Mr. Kutcher testified he did not authorize any repairs, the evidence shows he acknowledged that Terry Lockhart, his business associate, authorized repairs to some equipment. Specifically, when Mr. Kutcher received a letter from defendant in June 2007 requesting payment of the repair invoices, Mr. Kutcher responded:
Thank you for sending the invoices. It is without question that work is being done and you are trying to satisfy Tommy, Scott and myself. We will work *503 through these invoices. Tommy will need to pay the invoices that he is responsible for. I will pay what Scott has ordered and deduct it from his pay. Please discontinue any more work unless it is ordered by me.
liiThe evidence shows repairs charged for the bulldozer in April 2007 included labor to build a dirt ramp to unload the bulldozer from the trailer and the parts to replace the battery. These invoices were addressed to Mr. Lockhart, who never testified at trial, and Mr. Kutcher testified he never authorized any of this work.
The record indicates there was some confusion as to who owned what equipment for which there were outstanding invoices. In August 2007, an employee for defendant sent Mr. Kutcher a facsimile indicating that Mr. Lockhart represented he owned all the listed equipment, including the excavator and bulldozer at issue, and that she needed ownership documentation. Mr. Kutcher replied via facsimile stating that he/Chisholm Trail owned the excavator and bulldozer, among other equipment. Mr. Kutcher also acknowledged in his response that defendant thought he had a buyer for the bulldozer. At trial, Mr. Kutcher testified he and defendant discussed the sale of the bulldozer, but he never authorized its sale.
Mr. Kutcher testified he asked defendant on more than one occasion for an estimate on the bulldozer, but defendant told him that he had yet to look at it. Towards the end of June 2007, defendant started charging a storage fee for the bulldozer. He filled out an “Official Report of Stored Vehicle,” which is used by TRPL to eventually obtain a permit to sell the vehicle under the Louisiana Towing and Storage Act, La. R.S. 32:1711, et seq., on the bulldozer. However, according to a TRPL employee, such a form would not have been processed for a bulldozer because a permit to sell can only be issued for registered and titled vehicles, which does not include a bulldozer.
On September 17 and 24, 2007, defendant placed an advertisement in the Times Picayune stating that equipment, including the bulldozer at issue, was stored |inat Diesel Truck Service and if all current charges are not paid and the equipment claimed by the owner by October 25, 2007, a permit to sell may be obtained.[4]
On October 20, 2007, defendant sent a letter to Mr. Kutcher via facsimile indicating the bulldozer, among other equipment, was in his possession and that the repair and storage fees owed totaled $8,775.82. Defendant indicated he had obtained all the necessary permits to sell the equipment and intended to do so. Despite a confirmation report showing the facsimile was successful, Mr. Kutcher testified he never received the letter. However, Mr. Kutcher admitted receiving an invoice for the storage fees. He stated he was surprised when he received the invoice dated September 12, 2007 for storage fees for the bulldozer from June 2007 through September 2007 in the amount of $1,350.00, because he did not understand he would be charged storage fees for dropping off the bulldozer for an estimate of repair. Mr. Kutcher never indicated he tried to retrieve the bulldozer in the five months that passed from the time he dropped it off in April 2007 until he received the invoice.
*504 On November 7, 2007, defendant sent a letter to the Jefferson Parish Sheriffs Office as a follow-up to a phone conversation he had with Lieutenant Terry Poche one week earlier regarding the equipment. In the letter, defendant stated he had followed all legal procedures for ownership of the equipment, including notifying the responsible parties and advertising in the legal section of the newspaper. Defendant stated he needed to be certain that he had followed all rules and completed all necessary steps to obtain his equipment before selling or disposing of it. Defendant requested Lt. Poche contact him to discuss the best way to handle the situation.
| nDefendant subsequently sold the bulldozer to Mr. Michell on December 20, 2007, after obtaining advice from his counsel, Valerie Oxner, throughout the entire business contract and dispute over unpaid invoices. Ms. Oxner testified that she advised defendant of the procedure for taking ownership and selling untitled vehicles. She stated she helped him follow the proper legal procedure and was satisfied all required steps were followed. Ms. Oxner explained she sent letters to Chisholm Trail regarding unpaid invoices. She stated most of her communications were with Jack Studeville, who was an officer of Chisholm Trail, which owned the equipment at issue. But, Ms. Oxner testified she had some communication and physical meetings with Mr. Kutcher about the unpaid invoices. She also had dealings with Mr. Lockhart, who Ms. Oxner understood was doing work for Chisholm Trail and had authorized repairs to both equipment owned by Chisholm Trail and his own personal property.
We find that a rational trier of fact could not have found the evidence in this case proved beyond a reasonable doubt that defendant had the specific intent required for theft. The documentary and testimonial evidence shows defendant consulted an attorney, communicated verbally and in writing with Mr. Kutcher and other representatives of Chisholm Trail about the outstanding invoices and his intent to sell the bulldozer under a lien, and advertising his intent to - sell the bulldozer under a lien in the newspaper. The evidence, even viewed in a light most favorable to the prosecution, shows defendant had a reasonable belief that he had the right to sell the bulldozer under a lien thereby negating a specific intent to commit theft.
We are cognizant that we may not substitute our judgment for that of the jury. However, the jury’s conclusion cannot stand if the evidence is such that reasonable jurors must have a reasonable doubt. See State v. Mussall, 523 So.2d 1305, 1311 (La.1988). We find the evidence is such that reasonable jurors must have a reasonable doubt as to defendant’s specific intent to commit theft. Given the nature of the intent evidence presented, the facts do not rise to the specific intent necessary to convict defendant of theft involving the bulldozer. Rather, the evidence shows nothing more than a personal dispute between the parties.

DECREE

For the foregoing reasons, defendant’s conviction and sentence for theft over $500 from Mr. McGowan involving the excavator (Count 2) is affirmed. His conviction and sentence for theft over $500 from Mr. Michell involving the bulldozer (Count 1) is reversed.

AFFIRMED IN PART; REVERSED IN PART.

. This is defendant’s second appeal. Without addressing any of the issues raised by defendant, we dismissed his first appeal and remanded the matter for a ruling on his outstanding motion for post-verdict judgment of acquittal. State v. Swanzy, 10-483 (La.App. 5 Cir. 6/14/11), 71 So.3d 392, 394. On remand, the trial court denied his motion, and defendant timely appealed.

. A minute entry dated September 14, 2009 indicates the trial court continued the original sentencing date and ordered defendant to pay restitution in the amount of $25,000 to Mr. McGowan and $6,500 to Mr. Michell, the victims in this case. At the November 30, 2009 sentencing hearing, the trial court noted that defendant had made full restitution to the two victims.

. TRPL is a nonprofit trade association that helps towing, repair, and storage facilities go through the necessary paperwork to obtain permits to sell from the Department of Motor Vehicles when the owners of the vehicles or titled movables do not come forward to claim their property. An employee of TRPL testified at trial that heavy equipment, such as a *501 bulldozer, does not fall within the realm of titled vehicles for which a permit to sell is issued by the Department of Motor Vehicles.

. Defendant had counsel who helped him with his business endeavors. Defendant’s counsel, Valerie Oxner, testified that she had to explain to defendant the difference between selling titled and untitled vehicles. She explained that he did not need to obtain a permit to sell untitled vehicles, and she advised defendant of the process by which to obtain ownership and sell untitled vehicles through a repairman’s lien.