STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**12-347**


STATE OF LOUISIANA

VERSUS

BRENT ERVIN PRUDHOMME


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 52920
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Marc T. Amy, and J. David Painter, Judges.


**AFFIRMED.**


**Michael Harson**
**District Attorney**
**Post Office Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Ted L. Ayo**
**Assistant District Attorney**
**Post Office Box 175**
**Abbeville, LA 70510**
**(337) 898-4320**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, LA   70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Brent Ervin Prudhomme**

**AMY, Judge.**

The defendant was convicted of armed robbery and was sentenced to forty years at hard labor. The trial court ordered that the sentence be served without benefit of probation, parole, or suspension of sentence. The defendant appeals, questioning the sufficiency of the evidence of his identity as the perpetrator. He also questions whether his waiver of a jury trial was timely and whether the waiver was knowingly and intelligently entered. For the following reasons, we affirm.

## Factual and Procedural Background

The State alleged that, on May 17, 2010, the defendant, Brent Ervin Prudhomme, entered the home of Johnny Roche and, armed with a knife, took $20.00 and a cellular phone. By bill of information, the State charged the defendant with one count of armed robbery, a violation of La.R.S. 14:64. At the resulting bench trial, Mr. Roche identified the defendant as the perpetrator of the offense, informing the court that the defendant previously performed yard work for him. The trial court convicted the defendant as charged and imposed a sentence of forty years at hard labor, without benefit of probation, parole, or suspension of sentence.

The defendant appeals, assigning the following as error in his brief to this court:

[I.]   The identity of the robber was not sufficiently proven; thus, all of the necessary elements of the offense were not proven beyond a reasonable doubt.

[II.]   The trial court erred in accepting Mr. Prudhomme's waiver of a jury trial less than forty-five days before the judge trial was commenced.

[III.] The trial court erred in failing to question Mr. Prudhomme sufficiently to assure his waiver was knowingly and intelligently entered.

## Discussion

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, we have reviewed this matter for errors patent on the record. We find no such errors.

*Sufficiency of the Evidence*

The defendant first argues that his identity as the perpetrator was not sufficiently established at trial. Rather, he points out that Mr. Roche did not initially name him as the perpetrator and that, when presented with a photographic lineup, he identified two men as the possible perpetrator. The defendant argues that, although Mr. Roche identified him as the perpetrator at trial, the identification was tainted insofar as police officers provided the defendant's name after the lineup.

Louisiana Revised Statutes 14:64 provides that armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." In this case, the defendant only challenges his identity as the perpetrator of the offense, contending that this case is one of mistaken identity.

In considering the sufficiency of the evidence on review, an appellate court must consider whether, viewing the evidence in a light most favorable to the State, any rational trier of fact could have found proof, beyond a reasonable doubt, of all essential elements of the crime charged. *State v. Leger*, 05-11 (La. 7/10/06), 936 So.2d 108 (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979)). Determinations regarding the weight of evidence are questions of fact and rest solely with the trier of fact who may accept or reject, in whole or in part, the testimony of the witnesses. *State v. Silman*, 95-0154 (La. 11/27/95), 663 So.2d 27. It is not the role of the appellate court to assess credibility or to re-weigh evidence. *State v. Bordenave*, 95-2328 (La. 4/26/96), 678 So.2d 19.

In this light, one witness's testimony, if accepted by the trier of fact, is sufficient for a requisite factual conclusion absent internal contradiction or irreconcilable conflict with physical evidence. *State v. Robinson*, 02-1869 (La.4/14/04), 874 So.2d 66. Further, in resolving the question of whether the

2

defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to sustain its burden of proof beyond a reasonable doubt. *State v. Bright*, 98-398 (La. 4/11/00), 776 So.2d 1134.

As referenced by the defendant, one of the officers involved in the investigation of the offense, Officer Kendal Primeaux of the Kaplan Police Department, explained at trial that Mr. Roche pointed out two suspects in a photo line-up as Mr. Roche was not positive about which suspect committed the offense. Officer Primeaux further explained that the line-up was conducted approximately two to two-and-a-half weeks after the armed robbery. He further explained that the defendant was one of the two possible perpetrators selected from the line-up.

The State also called Lainie Harrington to the stand. Ms. Harrington explained that she lived next door to Mr. Roche and that, as she was driving to her residence the day of the offense, she saw a black male standing at Mr. Roche's door speaking with him. Although she did not know the man's name, she knew him as "the man that cut the grass[.]"

According to Ms. Harrington, about ten to fifteen minutes after she saw the individual at Mr. Roche's door, Mr. Roche came over, reported that he had been robbed, and asked to use the telephone. She explained that he was frightened and had difficulty talking. Ms. Harrington testified that Mr. Roche reported to her that the perpetrator entered his house for a cigarette, and when he turned his back, the man, armed with a knife, robbed him of his cell phone and money. She stated that she identified the man at the door as Brent Prudhomme to police. When questioned as to when she knew the name of the man at the door, she stated: "I knew he was the man that cut the grass, but they informed me his name was Brent Prudhomme."

Finally, Mr. Roche identified the defendant as the perpetrator at trial, stating that the defendant had worked on his lawn for a month-and-a-half to two months at

3

the time of the offense. Mr. Roche testified that the defendant would periodically stop and ask for a cigarette. Mr. Roche explained that, on the day of the offense, the defendant stopped twice. The first stop was in the morning, and the defendant was with a female. At that time, the defendant asked for $10.00 to buy a graduation gift and suggested that Mr. Roche could subtract it from his next payment for lawn work. Mr. Roche provided the money.

Mr. Roche explained that the defendant returned that afternoon and asked for a cigarette. Mr. Roche testified that, when he turned to retrieve the cigarettes, he heard the door close. When he turned around, the defendant had a knife in his hand, which he held about a foot away from Mr. Roche's stomach. Mr. Roche explained that the defendant stated that he wanted $20.00 and that he followed him to the bedroom for the money. Mr. Roche testified that, although the bedroom was dark, the defendant would not allow him to turn on the light. Mr. Roche then removed $20.00 from his wallet and handed it to the defendant. When the defendant turned to Mr. Roche's cell phone, Mr. Roche pulled a knife from a butcher block. After the exchange of some words between the two, the perpetrator retreated to the front door, removed a rag from his pocket, opened the doorknob with the rag, and walked down the street. Mr. Roche then proceeded next door to telephone police. Mr. Roche testified that he was one hundred percent sure that the perpetrator was the defendant.

With regard to the photo lineup where he chose two individuals as the perpetrator, Mr. Roche stated that he selected two because they both resembled the defendant. Mr. Roche testified that the photo on the left looked more like the perpetrator, but that the suspects in both photos looked much younger than the defendant. He explained that if he had been given the opportunity to identify the perpetrator at the jail, he would have chosen the defendant without a doubt. However, on cross-examination, Mr. Roche testified that he did not know the defendant's name

4

at the time of the offense nor did he provide Ms. Harrington with the defendant's name. Rather, he testified that he told her that: "I'd just been robbed by the man that cuts our grass. He cut their grass too." Mr. Roche stated that he first learned of the defendant's name when his son-in-law, a former police officer, came to visit him after the offense.

In his brief, the defendant suggests that the defendant's and Ms. Harrington's identification of him was tainted when the police officers supplied his name. Additionally, the defendant points out that Mr. Roche admitted to having some difficultly seeing things up close. Finally, the defendant references one aspect of Mr. Roche's testimony wherein he stated that: "And I'm sorry if I'm going to say this the wrong way. To me, 90 percent of blacks look the same to me. I'm sorry. And when you get [to] 61 years old and you get eyes like mine, you're going to see what I'm talking about."

In ruling, the trial court specifically addressed defense counsel's concerns regarding identification of the defendant as the perpetrator. The court acknowledged Mr. Roche's selection of two photographs from the line-up, but it ultimately concluded:

> I have the victim, Mr. Roche, testifying in a lot of detail and with absolute certainty each and every event that took place. The photo lineup, if that were the only evidence I had to identify Mr. Prudhomme as the perpetrator of this crime, then I would have serious problems; but the photo lineup is not even in evidence. So I can't even look at it to see for myself whether or not there is a similarity between the two.
>
> But Mr. Roche testified very honestly. There were two photographs that he was unsure about. One of them was the defendant, but a much younger version. He was -- he was asked at least twice if he was absolutely sure that the man seated in the courtroom today, who is Brent Prudhomme, was the man who committed the robbery on him at knifepoint, and he was absolutely sure.
>
> There is nothing to raise a reasonable doubt in my mind regarding mistaken identity. I don't see anybody else brought forward. There's no suggestion by the defendant that it could have been someone else. There

5

was an effort at that, trying to show that someone else cut the yard, and it might have been that person, perhaps another black male. I don't know.

Mr. Roche categorically said no one ever cut his yard but Mr. Prudhomme, whose name he didn't even know. He only knew him by sight. He knew him then. He knows him now. There's no doubt.

There's no alibi. There's nothing to show that Mr. Prudhomme was somewhere else. I understand he doesn't have to prove his innocence, but in the face of a positive identification by the victim, corroborated by two others, I can search my mind, my heart, and my soul all day long and not find a reasonable doubt.

I find him guilty. He was -- he robbed -- he took something from the person of Mr. Roche. He used force and intimidation to do it, and he was armed with a knife. Those are the elements that the State has proved.

Under the applicable standard of review, we conclude that the State sustained its burden of proving the defendant's identity as the perpetrator. We particularly note that the trial court's conclusion and weighing of the evidence was dependent upon its in-court observation of the victim, Mr. Roche. We do not disturb those findings on appeal.

Neither do we find merit in the defendant's contention that the photo lineup and the manner in which the photo lineup was shown to Mr. Roche tainted his subsequent in-court identification. In *Bright*, 776 So.2d at 1145, the supreme court explained that "[a]n identification procedure is suggestive if it unduly focuses a witness's attention on the suspect." It advised that, although "[s]trict identity of physical characteristics among the persons depicted in a photographic array is not required, . . . there must be sufficient resemblance to reasonably test the identification." *Id.* A reviewing court considers whether the procedure "is so conducive to irreparable misidentification that due process was denied." *Id.*

Under the facts of this case, we do not find that the procedure employed was such that due process was denied. Officer Primeaux stated that Mr. Roche "was not positive on who the suspect that committed the attempted robbery or the armed

6

robbery to him.  He chose out Image No. 1 and Image No. 3.  Detective Krawchuck pointed at both images because the victim wasn't sure."  On cross-examination, Officer Primeaux was questioned as follows:

Q.     Officer Primeaux, your testimony is that the victim - - Mr. Johnny Roche, is that correct?

A.     Correct.  That is correct.

Q.     - - was unable to pick out anyone in this photo lineup?

A.     Whenever we did the photo lineup, that's correct, sir, he was not positive.  He chose Image 1 and 3.

Thereafter, on redirect examination, Officer Primeaux testified:

Q.     I'm going to show you the photo lineup one more time.  You said that he picked out two individuals, correct?

A.     Correct.

Q.     Who was the individual picked out in spot No. 1?

A.     Image No. 1, I can identify him as Brent Prudhomme.  Image No. 3, I have no idea, sir.

Q.     But that's the two individuals he did pick out?

A.     That is correct.

Q.     So Brent Prudhomme was one of the individuals picked out?

A.     Correct, Sir.

Here, there is no indication that someone other than the victim chose the two images of the suspects from the photo lineup or that the officers pointed out any of the suspects before the two suspects were identified by the victim.  Neither is it apparent that the photo line-up, as conducted, resulted in the misidentification of the defendant at trial.

Having found that the record supports the defendant's identification under the applicable standard of review, we find no merit in this assignment of error.

7

*Waiver of the Jury Trial*

The defendant next argues that the trial court erred in accepting his waiver of a jury trial fewer than forty-five days before commencement of his bench trial.[1] Louisiana Constitution Article I, § 17, provides, in pertinent part that "[e]xcept in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury but no later than forty-five days prior to the trial date and the waiver shall be irrevocable."

The defendant refers this court to *State v. Chinn*, 11-2043 (La. 2/10/12), ___ So.3d ___, wherein the defendant was charged with four noncapital offenses. After the State requested an initial trial fixing forty-three days away, defense counsel agreed to the trial date, but reserved the defendant's ability to waive his right to trial by jury. The trial court accepted the defendant's waiver over the State's objection. That decision, however, was reversed on application for supervisory writs. Thereafter, the supreme court granted the defendant's application for supervisory review to consider "whether, by moving for a trial date less than forty-five days in advance, the State can take advantage of the provisions of La.Const. art. I, § 17(A) to prevent a defendant from waiving his right to a trial by jury." *Id*. at ___. In reinstating the trial court's ruling, the supreme court explained:

> In this case, the court of appeal relied on a literal application of La. Const. art. I, § 17(A) to hold that the district court erred in allowing the defendant to waive his right to trial by jury less than forty-five days prior to the scheduled trial date. However, as the defendant points out, such a literal application of the constitutional provision produces a result clearly unintended by the redactors of the provision: it allows the State, as it admittedly attempted in this case, to deprive a defendant in a non-capital proceeding of the constitutionally guaranteed right to waive a trial by jury simply by moving for a trial setting within the forty-five-day period engrafted onto the original constitutional provision by the 2010 amendment.

---

[1] The record reflects that the defendant waived his right to jury trial on July 12, 2011 and that the bench trial on this matter was conducted on July 14, 2011.

. . . .

> [P]roper application of La. Const. art. I, § 17(A) required the district court to take into account two considerations. First, as the district court properly recognized, the defendant has a constitutional right to request a waiver of a jury trial. Second, because La. Const. art. I, § 17(A) prescribes a time limit for exercising that right, the district court could not accept a waiver and simultaneously set a trial date within the forty-five-day time limit of the constitutional provision. Such was required by the posture of this case, where even though the defendant agreed to a trial date less than forty-five days in advance if he could also waive the jury, the State objected to the waiver. The legislative history of the 2010 amendment demonstrates that La. Const. art. I, § 17(A) was not intended to give the district attorney unfettered control over a defendant's ability to waive a jury trial. Where, as here, the State did not agree to allow a waiver within the forty-five-day period, the sole course of action available to the district court that did not cause the defendant's right to waive the jury trial to conflict with the forty-five-day period of La. Const. art. I, § 17(A) was to consider the waiver, and if the waiver was accepted, to set a trial date beyond the forty-five-day period.

> As indicated by the actions of the district court in permitting the defendant to waive the right to a trial by jury, the court intended to exercise its discretion to allow the defendant to waive his right to a jury trial. However, as noted above, the district court could not set a trial date within forty-five days and simultaneously allow the defendant to waive his right to a jury trial over the State's objection. To protect the defendant's constitutional right to waive a jury trial in this matter, the trial date could not be set within forty-five days such that the right to waive the jury trial would be lost. Under the unique facts of this case, the district court erred, not in allowing the waiver, as the court of appeal ruled, but in setting the initial trial date less than forty-five days away.

*Id.* at ___ (footnote omitted).

The present matter is clearly distinguishable from *Chinn*. The issue herein did not involve an attempt by the State to deprive the defendant of his right to waive a jury trial by fixing a trial date within the forty-five-day period. Rather, the defendant sought to simply exercise his right to waive a jury trial, albeit untimely. The State did not object but, in light of the forty-five day formality, requested that the defendant memorialize the waiver of his right to a jury on the record. The trial court proceeded to question the defendant to determine if he knowingly and voluntarily waived his

9

right to a jury trial. After determining the validity of the defendant's waiver, the trial court later proceeded with a bench trial without objection from either party.

In *State v. Carter* 11-758, (La.App. 5 Cir. 5/31/12), ___ So.3d ___, the fifth circuit was presented with the question posed by this case. However, the fifth circuit concluded that: "We need not opine whether the trial court erred in setting a judge trial in violation of La. Const. Art. I, § 17 in this case because the record reflects that both parties waived this argument as neither the state nor the defense objected to the setting of a bench trial in this matter and in fact acquiesced in the bench trial date. *See State v. Chinn,* 11–2043 (La.2/10/12), ___ So.3d ___." *Id.* at ___.

We note too, that, in *State v. Bazile*, 11-2201 (La. 1/24/12), 85 So.3d 1, the supreme court refused to consider the constitutionality of the jury waiver procedure in La.Const. art. I, § 17(A). The trial court declared, sua sponte, that the jury waiver procedure described in La.Const. art. I, § 17(A) was unconstitutional. The First Circuit Court of Appeal denied the State's request for supervisory review without comment, and the State petitioned for writ of certiorari. The supreme court held that the district court erred because the constitutionality of La.Const. art. I, § 17(A) was not raised by the parties in the district court. As such, the procedural posture of the case precluded a decision regarding the constitutionality of this provision.

Louisiana Code of Criminal Procedure Article 841(A) provides, "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." As noted by the supreme court in *State v. Dorsey*, 10-216, pp. 47-48 (La. 9/7/11), 74 So.3d 603, 636:

> "[t]he general rule is that appellate courts will not consider issues raised for the first time on appeal." [*Segura v. Frank,*] 93-1271, p. 15 (La.1/14/94); 630 So.2d 714, 725 (citing *Fried v. Bradley*, 219 La. 59, 87, 52 So.2d 247, 257 (1950) (cases cited therein)). This Court has consistently emphasized the goal of the contemporaneous objection rule of La.C.Cr.P. art. 841(A), "to promote judicial efficiency by preventing a defendant from gambling for a favorable verdict and then, upon

conviction, resorting to appeal on errors which either could have been avoided or corrected at the time or should have put an immediate halt to the proceedings" is just as valid in the penalty phase as in the guilt phase. *State v. Cooks*, 97-0999, p. 21 (La.9/9/98); 720 So.2d 637, 649 (quoting *State v. Taylor*, 93-2201, p. 7 (La.2/28/96); 669 So.2d 364, 368).

In light of the requirement of La.Code Crim.P. art. 841(A), and in consideration of the rulings in both *Carter* and *Bazile,* we find that the defendant's argument regarding the timeliness of his waiver of a jury trial is not properly raised for the first time on appeal. Accordingly, we do not address the merits of this assignment of error.

*Knowing and Intelligent Waiver*

Finally, the defendant contends that the trial court erred in failing to question him sufficiently to assure his jury trial waiver was knowingly and intelligently entered.

Louisiana Code of Criminal Procedure Article 780(A) provides in pertinent part that: "A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge."

This court has stated:

> In determining whether a defendant voluntarily waived his right to jury trial, a trial court is only required to determine whether the defendant's waiver was made knowingly and intelligently. *See State v. Campbell*, 42,099 (La.App. 2 Cir. 6/20/07), 960 So.2d 363. It "does not require a *Boykin*-like colloquy." *Id*. at 367.

> Although concrete requirements for determining if a waiver of jury trial is knowingly and intelligently made do not exist, this court has historically required, at a minimum, that there be a transcript containing a colloquy indicating that Defendant knows that he is entitled to a trial by jury and that he does not want to exercise that right. *See State v. P.T.*, 07-665 (La.App. 3 Cir. 12/5/07), 970 So.2d 1255, *writ denied*, 08-26 (La.5/30/08), 983 So.2d 895; *State v. Pierre*, 02-277 (La.App. 3 Cir. 10/2/02), 827 So.2d 619 (we reversed the trial court's finding that the defendant had knowingly waived her right to trial by jury when the transcript of the proceedings in which the right to jury trial was waived was missing, and, once found, indicated that the defendant had some doubts about the waiver and did not explicitly waive her right to trial by jury.)

*State v. Bias*, 10-1440, pp. 7-8 (La.App. 3 Cir. 5/4/11), 63 So.3d 399, 405, *writ*

11

*denied*, 11-1063 (La. 11/14/11), 75 So.3d 939 (footnote omitted).

In *State v. Hargrave*, 05-1027 (La.App. 3 Cir. 3/1/06), 926 So.2d 41, *writ denied*, 06-1233 (La. 11/22/06), 942 So.2d 552, this court found that the record established a knowing and intelligent waiver of the defendant's right to trial by jury. The transcript of the defendant's waiver demonstrated she was represented by counsel at the waiver hearing and that the trial court questioned the defendant before accepting her waiver. Also, the trial court established that the waiver was the defendant's decision, not simply acquiescence with her counsel's advice.

Similarly, in the present case, defense counsel explained at the hearing that he and the defendant had discussed waiving the jury and proceeding to trial with the judge alone. The trial court then questioned the defendant as follows:

> THE COURT: Mr. Prudhomme, you understand that you have an absolute right to a jury trial, which no one can take away from you?
>
> MR. PRUDHOMME: Yes, sir.
>
> THE COURT: You, of course, can waive or give up that jury trial. The only reason that I can think of that you would want to do that is because you feel that, because of the particular facts of your case or something about your case or about you would give you a better chance with a judge than with a jury.
>
> MR. PRUDHOMME: Yes, sir.
>
> THE COURT: Is that your thinking?
>
> MR. PRUDHOMME: That's what -- that's what I want to do.
>
> THE COURT: And has anybody pressured you --
>
> MR. PRUDHOMME: No, sir.
>
> THE COURT: -- or threatened you in any way?
>
> MR. PRUDHOMME: Nobody pressured me or anything. That's what I want to do.
>
> THE COURT: And you feel that you know your case completely?

MR. PRUDHOMME: Yes, I do.

THE COURT: And that your lawyer has shared everything that he knows with you?

MR. PRUDHOMME: Yeah, and his knowledge, yeah. Yes, sir.

THE COURT: Okay. All right. There is a new law that went into effect in June, I think --

MR. PRUDHOMME: I'm aware of that.

THE COURT: -- that says that -- or January -- that says, you know, if you want to waive your right to a jury, you have to do so 45 days before the trial. Now, of course, you didn't do that.

MR. PRUDHOMME: I know I didn't.

THE COURT: So the question becomes now, if the State says, well, okay, I'm not going to object, and if the Court says, all right, I'm going to let you do what you want to do, even though it's late, we don't want you coming back six months from now and saying, oh-oh, y'all did wrong. You've got to throw my -- if you get convicted --

MR. PRUDHOMME: Right.

THE COURT: -- come back and say, that was -- that shouldn't have been done. I should have had a jury trial. So you understand that the DA and your lawyer and the Court are doing you a favor by letting you waive your right to a jury now?

MR. PRUDHOMME: (Nodded head affirmatively.)

THE COURT: Is that what you want?

MR. PRUDHOMME: Yes, sir.

THE COURT: And you're giving up any right to come back in the future and say, I should not have been allowed to waive my jury trial.

MR. PRUDHOMME: (Nodded head affirmatively.)

THE COURT: You give up that right?

MR. PRUDHOMME: Yes, sir.

THE COURT: Okay. Then we'll have a judge trial for you. We've got two others, so you will be third.

MR. PRUDHOMME: All right.

13

THE COURT: And it'll be after this jury trial that we have. It may be next week.

MR. PRUDHOMME: Well, I'm ready for it whenever it's time.

THE COURT: We're going to get to it. I just don't know if it'll be this week or next.

MR. PRUDHOMME: All right. I appreciate it.

THE COURT: All right. You're welcomed.

MR. AYO: For the record, Judge, I'm hearing that he voluntarily waives his right to a jury trial, and the State has no objection.

THE COURT: I'm satisfied that it's not only voluntary, but he insists.

After review of the waiver colloquy, we find no error in the trial court's conclusion that the defendant, with the assistance of counsel, made a knowing and voluntary waiver of his right to a trial by jury.

Accordingly, we find no merit to this assignment of error.

**DECREE**

For the foregoing reasons, the defendant's conviction is affirmed.

**AFFIRMED.**

14