NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1072

STATE OF LOUISIANA

VERSUS

ANTHONY BARDWELL

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 173,143-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

**Angelo Joseph Piazza, III**
**P. O. Box 429**
**Marksville, LA 71351**
**(318) 253-6423**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Anthony Bardwell**

**Charles A. Riddle, III**
**District Attorney**
**David LaFargue**
**Assistant District Attorney**
**Twelfth Judicial District**
**P. O. Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**EZELL, Judge.**

Defendant, Anthony Bardwell, was indicted on April 25, 2013, with theft by fraud, a violation of La.R.S. 14:67. Defendant elected to be tried by the judge, and trial commenced on May 29, 2014, following which he was found guilty as charged. Pursuant to La.Code Crim.P. art. 893(E), Defendant's sentence was deferred, and he was placed on thirty-six months probation. He was ordered to pay a fine of $1,000.00, $399.00 court costs, $10,421.95 restitution payable at the rate of $329.00 per month, and a $71.00 per month probation supervision fee, commencing August 1, 2014.

Defendant has perfected a timely appeal wherein he asserts two assignments of error: 1) the evidence was insufficient to establish the intent to commit fraud; and 2) the trial court erred when it ordered restitution in the amount of $10,421.95. For the following reasons, we affirm Defendant's conviction and the conditions of probation.

## FACTS

Defendant received payments in the amount of $13,497.95 from Colby Maldonado to rebuild an engine for a 2000 Chevrolet truck and to supply and rebuild broken parts for the 2000 Chevrolet truck and a 1997 Chevrolet truck. Work commenced approximately in June 2008. However, Defendant never rebuilt the engine for the 2000 truck nor fixed all of the broken parts for the 2000 and 1997 trucks.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find several errors patent.

Defendant was entitled to a trial by jury. La.Code Crim.P. art. 782 and La.R.S. 14:67(2). The court minutes of February 13, 2014, indicate Defendant advised the trial court of his desire to waive his right to trial by jury. After "interrogation by the court and the answers given by the Defendant," the trial court found the waiver of trial by jury was knowingly, intelligently, and voluntarily entered.

Effective November 22, 2010, La.Const. art. 1, § 17(A), added, "[e]xcept in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury but no later than forty-five days prior to the trial date and the waiver shall be irrevocable." Additionally, La.Code Crim.P. art. 780 was amended effective June 17, 2013, requiring a written waiver of jury trial signed by the defendant and his attorney "not later than forty-five days prior to the date the case is set for trial." However, La.Code Crim.P. art. 780(C) allows a waiver within forty-five days prior to the commencement of trial with the consent of the district attorney. In *State v. Robinson*, 48,819, pp. 4-6 (La.App. 2 Cir. 2/26/14), 136 So.3d 302, 305-06, the court, in addressing the assigned error of untimely waiver of trial by jury, examined La.Const. art. 1, § 17 and La.Code Crim.P. art. 780 and explained in pertinent part:

> La. Const. Art. I, § 17(A), as amended in 2010, provides that, except in capital cases, a defendant may waive his right to a trial by jury **but no later than 45 days prior to the trial date**. The waiver is irrevocable. *State v. Chinn*, 11-2043 (La.02/10/12) 92 So.3d 324. In *State v. Bazile*, 12-2243 (La.05/07/13), [144] So.3d [719], 2013 WL 1880395, the Louisiana Supreme Court held that the 45–day period is applied prior to the initial trial date regardless of any subsequent continuances.

> In *State v. Chinn*, *supra*, the issue before the court was whether the state could successfully object to a jury trial waiver by requesting an initial trial setting of less than 45 days from arraignment. This was admittedly the strategy of the state to ensure a jury trial. To allow the

state to effectively take away a defendant's right to waive a jury trial by a quick trial setting was not in keeping with the spirit of the constitutional amendment. The court in *State v. Chinn*, *supra* at 330, explained:

> The clear intention of the redactors of La. Const. art. I, § 17(a) was to prevent last minute waivers by criminal defendants of the right to a jury trial. Consequently, La. Const. art. I, § 17(a) was enacted to limit the time period in which a criminal defendant charged with a non-capital offense may exercise his or her constitutional right to waive a jury trial.

In *State v. Bazile*, *supra*, the supreme court explained its decision in *State v. Chinn*, *supra,* and further held that the reference to the "trial date" in the 2010 amendment must refer to the initial trial setting of the matter. In *State v. Bazile*, the defendant waived his right to a jury trial over a year after his arraignment, but less than 45 days from his **actual** trial date. Bazile's initial trial date had been continued and reset several times prior to his jury trial waiver. Finding that, at the time Bazile waived his right to a trial by jury, he was prohibited by La. Const. Art. I, § 17(A) from exercising that waiver, the supreme court explained, in *State v. Bazile*, *supra* at, [20],[144] So.3d at [735] :

> The reference in the constitutional provision to a "trial date" must, we believe, refer to the initial trial setting of the matter. As this case shows, an initial trial setting may be continued again and again, which would turn a defendant's actual date of trial into a moving target. Since trial settings are often extended for a variety of reasons, there must exist a fixed point in time by which the timeliness of a defendant's jury waiver can be determined. If the term "trial date" is interpreted to mean a date which could be continued, this interpretation would conflict with the clear intention of the provision to prevent last minute jury trial waivers. Thus, we interpret the term "trial date" in La. Const. art. I, § 17(a) to mean the initial trial setting.

A recent decision by the Third Circuit is also instructive. In *State v. Prudhomme*, 12–347 (La.App.3d Cir.11/07/12), 101 So.3d 565, the defendant sought to exercise his right to waive jury trial, albeit untimely. There was no objection by the state and, on this basis, the Third Circuit distinguished *State v. Chinn*, *supra*, and determined that the waiver was validly entered.

Furthermore, in *State v. Carter*, 11–758 (La.App.5th Cir.05/31/12), 96 So.3d 1283, the Fifth Circuit actually declined to consider the issue where neither the defendant nor the state objected

to the waiver and both "acquiesced in the bench trial date." The *Carter* court cited La. C. Cr. P. art. 841, stating that the issue could not be raised for the first time on appeal.

In this case as in *State v. Prudhomme*, *supra*, and *State v. Carter*, *supra*, the state never objected to defendant's waiver. La. C. Cr. P. art. 841(A) provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. Further, as in *State v. Prudhomme*, *supra*, because there was no objection from the state and no attempt by the state to deprive defendant of his right to exercise the waiver, the waiver was validly entered.

Significantly, the spirit of the 2010 amendment is not offended by validating defendant's waiver in this case. In response to the 2010 constitutional amendment to Art. I, § 17(A) and *State v. Bazile*, *supra*, with an effective date of August 1, 2013, by Act No. 343, the legislature amended La. C. Cr. P. art. 780 to provide that waiver of a jury trial must be by written motion, signed by the defendant and defendant's counsel unless defendant has waived counsel and must be no later than 45 days prior to the trial date; ***however, with the consent of the district attorney, trial by jury may be waived within the 45 days prior to trial***. For these reasons, we conclude that the waiver is valid and does not run afoul of the 2010 constitutional amendment.

On the face of the record in this case, there are several errors patent in violation of La.Const. art. 1, § 17 and La.Code Crim.P. art. 780. The initial trial date was September 9, 2013. Defendant requested a waiver of trial by jury on February 13, 2014, after the initial trial date was to commence. Thus, the trial court erred in allowing Defendant to waive his trial by jury. However, as in *Robinson*, there was no objection by Defendant nor the State and the error was not assigned on appeal; thus, we find any error was harmless. *See also State v. McKeel*, 13-855 (La.App. 3 Cir. 2/12/14), ___ So.3d ___. Additionally, in this case, there was no written waiver as required by Article 780. In *State v. Bell*, 13-1443, pp. 2-3 (La.App. 3 Cir. 6/4/14), 140 So.3d 830, 832 (footnote omitted), a similar error was addressed by this court, and this court held in pertinent part:

The record reveals no written waiver of jury trial as required by La.Code Crim.P. art. 780. However, Defendant and his attorney were

4

in open court when the judge addressed his right to a jury trial and waiver thereof. *Cf. State v. Pierre*, 02-2665 (La.3/28/03), 842 So.2d 321 (the preferred (not required) method is the court's advisement of the right to a jury trial in open court and the defendant's personal waiver). Thus, we conclude that the error in failing to obtain a written waiver in violation of La.Code Crim.P. art. 780 is harmless under the facts of this case.

Thus, as in *Bell*, we find the error was harmless in this case.

Next, the record does not indicate the trial court advised Defendant of the prescriptive period for filing an application for post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to him within thirty days of the rendition of this opinion and to file written proof in the record indicating Defendant received the notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues that the State failed to show that he had the intent to defraud Mr. Maldonado. He argues that the arrangement was contractual and, therefore, a civil matter. Defendant further argues that, while he did do several repairs on the vehicles, he did not agree to rebuild the engine of the 2000 Chevrolet truck and that many of the parts ordered were for two, four-wheeler ATVs that he had repaired for Mr. Maldonado. Defendant argues that the State failed to prove he had the intent to commit fraud; therefore, the conviction of theft by fraud should be vacated.

In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence viewed in the light most favorable to the prosecution was sufficient to convince a rational trier of fact that all the elements

5

of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443

U.S. 307, 99 S.Ct. 2781 (1979).

Defendant was convicted of theft in violation of La.R.S. 14:67, which, in

pertinent part, is defined as follows:

> A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

The fifth circuit in *State v. Swanzy*, 11-882, p. 7 (La.App. 5 Cir. 5/8/12), 96

So.3d 498, 502, *reversed on other grounds*, 12-1297 (La. 4/1/13), 110 So.3d 549,

12-1281 (La. 4/1/13), 144 So.3d 711, discussed the elements of theft by fraud and

the State's burden of proof, as follows:

> [I]n order to support a conviction for theft pursuant to La. R.S. 14:67, the State is required to prove that defendant misappropriated or took, a thing of value, that belonged to another, without the consent of the owner, and that he had the intent to deprive the owner permanently of that which was misappropriated or taken. *State v. Carmen*, 08-478 (La.App. 5 Cir. 1/27/09), 3 So.3d 587, 591. In addition, the State is required to prove the value of the stolen property, since the determination of the severity of the offense and the degree of punishment upon conviction depends upon the value of the stolen goods. *State v. Ramsdell,* 06-644 (La.App. 5 Cir. 12/27/06), 949 So.2d 508, 511. In this case, the State was required to prove that the value of the goods was over $500.
>
> Theft is a crime of specific intent. *State v. Patterson*, 11-158 (La.App. 5 Cir. 11/29/11), 78 So.3d 855, 859. Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. *State v. Joseph,* 09-400 (La.App. 5 Cir. 12/29/09), 30 So.3d 157, 165. A reasonable and honest belief that one owns an interest in property precludes a finding that he intended to take the property of another. *State v. Henry,* 46,406 (La.App. 2 Cir. 8/10/11), 73 So.3d 958, 966; *State v. Rabalais*, 99-623 (La.App. 3 Cir. 1/26/00), 759 So.2d 836, 841-42.

In the current case, the following evidence was submitted at trial:

Colby Maldonado lived in Moreauville, Louisiana. He had known Defendant since 2005. He stated that he and Defendant became good friends because they shared a passion for riding and racing four-wheelers. He stated that Defendant was a mechanic, and he had hired Defendant to do some work on two of his "mud trucks." He testified that in 2008, he gave Defendant possession of a blue 2000 Chevrolet truck. He asked Defendant "to rebuild the engine and like make it a full race truck as in roll cage, fuel cells, racing engine, carburetor, just everything to race it in the mud." He said that after a year and a half, he asked to see how the engine was coming along, but Defendant told him he was working on the truck at "Nikki Joe's," a mechanic's shop in Brouillette. Meanwhile, Mr. Maldonado bought a white 1997 Chevrolet truck which he drove in mud races until he blew out the engine. He stated that he took the 1997 truck to a friend's house, John Lemoine, where they pulled out the engine, "bored it out," and asked Defendant "to build [him] a 383 stocker out of the 350 engine block." While Defendant never picked up the 1997 Chevrolet truck engine, Mr. Maldonado paid for parts for the engine.

As time went on, he got the 2000 truck back, without the engine. He stated that there was nothing done to the truck at all. Mr. Maldonado testified that around Christmas 2011, Defendant texted him that he had just delivered the 2000 engine to Mr. Maldonado's house. Defendant said that the engine was ready to install. However, when Mr. Maldonado examined the engine, he saw that, except for some cosmetic silver paint on the block and black paint on the exhaust valves, nothing had been done to the engine. Mr. Maldonado called his friend, Mr. Lemoine, and together they dismantled the engine. He identified pictures of the engine and

described how nothing had been cleaned, the inside of the head and valves were "sooted up." The pistons and cylinders should have been new or at least cleaned. He stated that the next day he went to Defendant's house and retrieved the remaining parts, the 350 transmission and the transfer case. Mr. Maldonado identified pictures of the turbo 350 transmission and the transfer case that were to be rebuilt but were not.

Mr. Maldonado identified eleven checks, the first check written June 29, 2008, and the last check written November, 8, 2011, totaling $13,497.95. He also identified and discussed Defendant's exhibits 5-17, which, purportedly, were invoices/receipts for the parts purchased, the labor cost, and the payments Mr. Maldonado made from June 2008 to November 2011. Mr. Maldonado testified he never received an invoice or a receipt; he just wrote a check for whatever Defendant told him he was owed for parts and labor.

Mr. Maldonado testified that Defendant had done some work on one of his four-wheelers in 2006. However, he asserted that several of the parts that were listed on the invoices were for ATVs and not for trucks.

Brooks Jeansonne, who owned BJ's Bottle Shop and BJ's ATV and Truck Accessories Shop, testified that he custom builds ATVs "and do[es] lift kits on trucks and tire and wheels, sound systems, accessorize ATVs and vehicles." He stated he has known Mr. Maldonado since they were youngsters and Defendant for around ten years. He, Mr. Maldonado, and Defendant were good friends. Mr. Maldonado would sometimes leave checks for Defendant at BJ's Bottle Shop. Mr. Jeansonne reviewed the invoices/receipts. He identified several items listed as parts for an ATV. He also pointed out that in two of the invoices/receipts, duplicate items were purchased. He testified that he examined the engine and that, although

the head and exhaust valves were painted, the engine had not been rebuilt. While Mr. Jeansonne admitted he was not privy to the actual agreement between Defendant and Mr. Maldonado, he indicated it was his understanding from conversations between the two parties that Defendant was to rebuild the engine.

John Lemoine's testimony corroborated Mr. Maldonado's testimony. He stated he was a mechanic and owned Lemoine Automotive and Repair Shop. He helped check over the engine and testified that it was not rebuilt.

Defendant testified that he worked as a mechanic for Glenn's Auto Repair. He said he has been a mechanic since childhood, when he used to help his father repair vehicles. He stated he also had his own little vehicle repair business on the side. He said he started to work for Mr. Maldonado in 2006 when he did work on Mr. Maldonado's Yamaha Kodiak 450, a four-wheeler. Defendant reviewed the invoices/receipts. He explained the parts and labor indicated on Defendant's exhibits 5-10 were mostly for work on two of Mr. Maldonado's four-wheelers. However, he did do repairs on the two trucks. He testified that there was never an agreement to rebuild the 2000 Chevrolet engine. While he and Mr. Maldonado pulled the engine out at Defendant's house, they eventually put the engine aside because Mr. Maldonado had bought the 1997 Chevrolet truck and was racing it until he blew out the engine.

He testified that he helped repair the front end of the 1997 truck twice and the rear end once. He fixed the "locker" once and "built the transmission for that one too." He said the last thing he did to the 1997 truck was to repair the axles.

Defendant stated that, while he continued to print out the invoices/receipts for his own records, after Mr. Maldonado balled up the first few invoices/receipts and tossed them away, he stopped giving them to him. Furthermore, while he kept

9

the receipts for the parts he had purchased, they were all mixed up with other receipts, and he did not separate them out. He agreed that he could not show that he purchased the parts listed on the invoices. He also insisted that the engine shown in the State's Exhibit 14 was not the engine he had delivered to Mr. Maldonado.

Prior to closing arguments, the trial court asked both counsel to address specifically the element of intent to defraud Mr. Maldonado. After arguments, the trial court ruled:

> Well the other thing that [is] so important in favor of the state is the fact that the engine was there so long and if it was there because it was the intent to fix it. This is clearly a civil matter, however whenever the indictment was brought and from the evidence presented, most importantly the testimony from Mr. Jeansonne cohobated [sic] that of Mr. Maldonado that the blue pickup truck it was brought for the engine to be taken out and repaired and it simply never was done. Eleven different checks were written to Mr. Bardwell and there's only one invoice presented here today, the rest are all receipts and one of them is pretty much a duplicate and a few of them have duplicate parts. I don't know what was going on specifically in Mr. Bardwell's life, it's obvious he's a good mechanic and he's obviously a good man, but he did something in this thing that was poor choices. He took money from Mr. Maldonado to do work and obviously through the length of time and the number of checks clearly knew that he wasn't going to do it and had the intent to keep the money and not do that work, which means he must be found guilty of the offense charged.

We agree with the trial court. Although intent is a question of fact, as in this case, intent may be inferred from the circumstances of the transaction. *State v. Sepulvado*, 93-2692 (La. 4/8/96), 672 So.2d 158, *cert. denied*, 519 U.S. 934, 117 S.Ct. 310 (1996). The circumstances in this case indicate that Defendant had no intent to carry out his promise. Mr. Maldonado testified that Defendant had possession of the truck and the engine for more than a year-and-a-half. When Defendant returned the engine to Mr. Maldonado with the promise that he could

immediately install the engine, he misrepresented that the engine had been rebuilt to specification. Mr. Maldonado's testimony that the engine that was returned to him was not rebuilt was corroborated by Mr. Jeansonne and Mr. Lemoine, both of whom were in the automotive repair business. Furthermore, Defendant's fraudulent intent was demonstrated by the fact that he painted the engine block and exhaust valves to look new but did nothing to repair or rebuild the engine. After reviewing the record and giving deference to the trial court's factual conclusions, we find that the trial court did not err when it determined that Defendant misrepresented his intention to fully perform as agreed. Accordingly, there is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant argues that the trial court erred when it awarded Mr. Maldonado "a full award of restitution in the amount of $10,421.95." He states in brief: "This amount represents the sum total of all checks paid by Maldenado to Bardwell. This conflicts with the court's established factual finding that 'clearly some of the checks that were paid by Mr. Maldenado [sic] were paid for other work[.]'"

Defendant argues that he earned fees for actual work done. However, this is the extent of Defendant's argument. He does not discuss which checks paid to Mr. Maldonado represented what "other work."

At the sentencing hearing, the trial court stated for the record:

Also a special condition of probation is you make restitution to the victim of the crime in the sum of $10,421.95 and I want to tell you, that to come up with that amount, actually Mr. Lafargue representing the state, after all the hard work of Officer Dauzat in reviewing the file, and myself looking through the file that is the best number we could come to. Mr. Maldonado actually claimed more money to be [owed] but some of that came from something that really pre-dated these charges.

11

As noted above, the total sum of the checks came to $13,497.95. The State, in brief, points out that while the checks submitted into evidence were dated beginning June 2008, the indictment listed the offense as occurring between the years of 2010 and 2011. Accordingly, the trial court considered only the checks written in 2010 and 2011, which totaled $10,421.95. Defendant has failed to show how the trial erred when it determined the amount of restitution to be paid to Mr. Maldonado. We find that there is no merit to this assignment.

## DECREE

For the reasons set forth in this opinion, Defendant's conviction is affirmed as are his conditions of probation pursuant to La.Code Crim.P. art. 893(E). However, the trial court is directed to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within thirty days of the rendition of the opinion and to file written proof in the record that Defendant received the notice.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.